**Robert PHILLIPS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–02–00193–CR to 14–02–00195–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 26, 2004.

Belinda Johnson Chagnard, Houston, for appellant.

Kelly Ann Smith, Houston, for appellee.

Panel consists of Chief Justice BRISTER and Justices FOWLER and EDELMAN.

## MAJORITY OPINION
## ON REHEARING

WANDA McKEE FOWLER, Justice.

We withdraw our opinion issued November 20, 2003, and substitute the following opinion on motion for rehearing.

A jury found appellant guilty of three counts of sexual assault of a child, and sentenced appellant to ten years' confinement in the Texas Department of Criminal Justice, Institutional Division and a $5,001.00 fine for each count. In nine issues on appeal, appellant complains that the trial court erred (1) by refusing to grant a mistrial even though a witness had mentioned an extraneous offense, (2) by not requiring the State to elect a specific transaction, (3) by refusing to grant a mistrial on the basis of improper jury argument, and (4) by refusing to grant a mistrial because the State improperly commented on appellant's right to a jury trial. We affirm in part and reverse in part. For two of the indicted offenses, we reverse because we conclude the trial court committed harmful error in not requiring the State to elect which offenses it was relying on for conviction. For the third indicted offense, we affirm because the State presented specific testimony of only one occurrence; on this count, the State was not required to elect.

## FACTUAL AND PROCEDURAL
## BACKGROUND

Appellant initially hired the fifteen-year-old complainant to teach him English and to help him with his business. While they were working together, appellant sexually assaulted the complainant; this sexual activity continually escalated for months. On March 10, 2000, appellant took the complainant to a hotel room where they engaged in sexual activity. The complainant eventually told her mother of the activity, and her mother notified the police.

The State charged appellant with three counts of sexual assault of a child. The jury found appellant guilty of all three counts.

## DISCUSSION

Appellant raises nine issues on appeal. In his first issue, appellant contends the trial court erred when it refused to grant his motion for a mistrial based on a witness's comment about an extraneous offense. Combined in the second, third, and ninth issues, appellant argues the trial court failed to compel the State to elect which transaction it would rely upon for conviction. In the fourth, fifth, seventh, and eighth issues, appellant complains that the trial court erred when it refused to grant a mistrial because of the State's improper jury arguments. Finally, in the sixth issue, he asserts the trial court erred when it refused to grant a mistrial because the State improperly commented on appellant's right to a jury trial.

## I. IMPROPER COMMENT ON EX-TRANEOUS OFFENSE

■ First, appellant argues the trial court erred by not granting him a mistrial when the complainant mentioned an extraneous offense. At appellant's request, the trial court instructed the jury to disregard the statement. Nonetheless, he claims a mistrial was warranted. We review a trial court's denial of a mistrial under an abuse of discretion standard. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex.Crim.App.1999), *cert. denied*, 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000).

■ An instruction by the trial court to disregard improper testimony will usually cure error. *Campos v. State*, 589 S.W.2d 424, 428 (Tex.Crim.App.1979); *Zataraus v. State*, 666 S.W.2d 294, 296 (Tex. App.-Houston [14th Dist.] 1984, no pet.). When the trial court instructs a jury to

disregard, we presume the jury follows the trial court's instructions. *See Waldo v. State*, 746 S.W.2d 750, 752–53 (Tex.Crim. App.1988). However, if the error is extremely prejudicial and cannot be withdrawn from the juror's minds, the trial court should declare a mistrial. *See Lusk v. State*, 82 S.W.3d 57, 60 (Tex.App.-Amarillo 2002, pet. ref'd). Accordingly, a mistrial is only appropriate when the event is "so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant." *Id.* at 60; *see also Shepherd v. State*, 915 S.W.2d 177, 179–80 (Tex.App.-Fort Worth 1996, pet ref'd) (holding a repeated comment on defendant's failure to testify warranted mistrial).

Here, when the State questioned the complainant about specific acts, she alluded to an extraneous offense by appellant. She stated, in part, the following:

> [The State]: All right. At some point 14 months later, 15 months later, 16 months later, around May of 2001, did you finally tell your mom?
>
> [The Complainant]: I finally told my mother after my sister confessed of something.
>
> [Defense Attorney]: I will ask that last statement be stricken and the jury be instructed to disregard. May we approach the bench, Your Honor?

Outside the jury's presence, appellant's counsel requested a mistrial. The trial court denied the mistrial, but instructed the jury to disregard the last question and the last answer.[1]

First, we do not find that the comment obviously refers to an extraneous offense. But even if it did refer to an extraneous offense, the remark was inadvertent and isolated.[2] Moreover, the single reference to any possible activity between appellant and the complainant's sister was not "so emotionally inflammatory"[3] that the trial court's instruction to disregard did not cure all error. *See Lusk*, 82 S.W.3d at 60. Given the vague nature of the comment, the trial court did not abuse its discretion in denying appellant's motion for a mistrial. *See Ladd*, 3 S.W.3d at 567. We overrule appellant's first issue.

## II. FAILING TO ELECT A TRANSACTION FOR EACH OFFENSE

In issues two, three and nine, appellant complains that the trial court committed reversible error when it failed to require the State to elect which transaction it would rely upon for each of the three indicted offenses. As to two of the indicted offenses, we agree that the trial court erred by not requiring the State to elect the transaction, and that the error was harmful. As to the third indicted offense—the penetration of the complain-

---

1. The trial court also instructed the State to again confer with its witness and explain what evidence she could and could not testify about.

2. In fact, the complainant may have said the last comment so softly that the jury could not have heard her. The court reporter recorded the word "something" and read that back to the trial court, while the trial court believed the word was "him." The defense attorney admitted that the court reporter could barely hear her.

3. We do not use this phrase to imply that an assault on the sister would not impact the jury at all; we use it only to make the point that no detail was given, we do not know exactly what the comment referred to, and it was mentioned only briefly. This is not the type of testimony that normally would inflame a jury and prevent it from following the court's instruction.

ant's mouth with a sexual organ—we find no harmful error.

## A. Legal Premises Underlying the Election Requirement.

The general rule is "where one act of intercourse is alleged in the indictment and more than one act of intercourse is shown by the evidence in a sexual assault trial, the State must elect the act upon which it would rely for conviction." *O'Neal v. State*, 746 S.W.2d 769, 771 (Tex. Crim.App.1988). Before the State rests, the trial court has discretion in directing the State to make an election. *See id.* "However, once the State rests its case in chief, in the face of a timely request by the defendant, the trial court *must* ... order the State to make its election. Failure to do so constitutes error." *Id.* at 772; *see also Crosslin v. State*, 90 Tex.Crim. 467, 235 S.W. 905 (1921).

Case law has given four reasons for the rule:

- to protect the accused from the introduction of extraneous offenses, *see Fisher v. State*, 33 Tex. 792, 794 (1870);
- to minimize the risk that the jury might choose to convict, not because one or more crimes were proved beyond a reasonable doubt, but because all of them together convinced the jury the defendant was guilty, *see id.* ("The jury may have taken both [offenses] into account, and have considered that one or the other was not sufficiently made out to warrant a conviction, but that both together convinced [it] of the guilt of the defendant. ...");
- to ensure unanimous verdicts, that is, all of the jurors agreeing that one specific incident, which constituted the offense charged in the indictment, occurred, *see Francis v. State*, 36 S.W.3d 121, 123–25 (Tex.Crim. App.2000); and
- to give the defendant notice of the particular offense the State intends to rely upon for prosecution and afford the defendant an opportunity to defend, *see O'Neal*, 746 S.W.2d at 772–73.

*See also* DIX AND DAWSON, TEXAS PRACTICE, Criminal Practice and Procedure, *Election Among Transactions, "Offenses," Acts, or Incidents*, vol. 42, §§ 30.52–30.60, pp. 664–0687 (2d ed.2001).

The State admits the trial court erred by not requiring the State to elect an act and a date, and we find the trial court did err by not instructing the State to elect a transaction. *See id.* Having found that the trial court erred, our next task is to determine whether the error was harmful. Two problems complicate that review, which we will address in turn.

## B. Complaint Not Waived by Giving a Bad Reason for Wanting an Election.

The first complicating fact is that on appeal, appellant gives a different reason for wanting the election than he gave the trial court. At trial, appellant advanced double jeopardy concerns as his reason for seeking an election.[4] But, on appeal, appellant contends that the State's failure to elect precluded him from establishing an alibi defense. In spite of this disparity between the complaint at trial and the complaint on appeal, we hold that

---

4. Double jeopardy concern is not a valid reason for wanting an election. If the State does not elect, it is barred from prosecuting in the future any offense within the scope of the indictment and for which evidence was introduced at trial. Ex parte *Goodbread*, 967 S.W.2d 859, 860–61 (Tex.Crim.App.1998). So, theoretically, the defendant is more protected from prosecution for multiple offenses if the State does not elect than if it does.

appellant did not waive his complaint that the court should have required the State to elect a transaction for the three offenses.[5]

■■■ To preserve a complaint for appellate review, a defendant must make a timely request, objection, or motion that specifically states the grounds for the requested ruling. TEX.R.APP. P. 33.1(a)(1). "An objection stating one legal basis may not be used to support a different legal theory on appeal." *Jensen v. State*, 66 S.W.3d 528, 536 (Tex.App.-Houston [14th Dist.] 2002, pet ref'd).

■■■ Although appellant advances a different reason for wanting an election on appeal than he advanced at trial, the legal basis for his motion remained the same: he wanted the State to elect the offenses it would rely on for conviction. The trial court was not denied an opportunity to rule on whether to require the election. The election was mandatory, regardless of the stated reason. *See O'Neal*, 746 S.W.2d at 772 ("[O]nce the State rests its case in chief, in the face of a timely request by the defendant, the trial court *must* . . . order the State to make its election."). In fact, for the State to be required to elect, the defendant only needs to ask for an election; he need not state why he wants it. *See id.* The reason for wanting it does not matter. On this issue, the trial judge should not have any question; when an election is requested in the right type of case, an election is mandatory. *See id.*

**C. The Failure to Require An Election is Constitutional.**

■■■ Having concluded that appellant can raise a new reason on appeal for wanting an election, we turn to the next complicating factor of our review, and that is, whether the error is constitutional or non-constitutional. We find the case law from the Court of Criminal Appeals unclear on this issue, and the intermediate appellate case law, although clear on what type of error it is, is unconvincing and inadequate as to why the courts have held that the error is non-constitutional or constitutional.

Two Courts of Appeals have held that any error in failing to require the State to elect is non-constitutional in nature. *See Cates v. State*, 72 S.W.3d 681, 696–97 (Tex. App.-Tyler 2001, no pet.); *Wilson v. State*, 3 S.W.3d 223, 226 (Tex.App.-Waco 1999, pet. ref'd). We respectfully disagree.

The analysis in *Wilson* was based on a decision by the Court of Criminal Appeals in *Garcia v. State* regarding the specificity of the date in an indictment. *Wilson*, 3 S.W.3d at 226. In *Garcia*, the Court of Criminal Appeals held that failing to specify in an indictment the precise date on which the charged offense occurred is not constitutional error. *Garcia v. State*, 981 S.W.2d 683, 686 (Tex.Crim.App.1998). Relying on this decision, the *Wilson* court "conclude[d] that a failure to require an election by the State is not an error of constitutional dimension." *See Wilson*, 3 S.W.3d at 226. Unlike the *Wilson* court, we believe *Garcia* is irrelevant to the issue now before us.

Three reasons were advanced in *Garcia* as to why the failure to specify a precise date in the indictment was not constitutional:

First, time is not a material element of an offense (at least, not usually). Second, the primary purpose of specifying a date in the indictment is not to notify the accused of the date of the offense but rather to show that the prosecution

**5.** Nor does the State appear to contend that appellant waived the argument. The State appears to argue that the failure to raise the issue at trial demonstrates appellant's inability to establish an alibi, not waiver.

is not barred by the statute of limitations. Third, it may be impossible for the State to know precisely, or even approximately, when the charged offense occurred.

*Garcia,* 981 S.W.2d at 686 (internal citations omitted).

None of these reasons apply to the failure to elect. First, the identity of the offense charged is clearly a material element of that offense. Second, the purpose of election in a case like this, in which multiple offenses may have occurred, is to notify the defendant of the offense with which he is charged, to allow him to prepare a defense, and to obtain a unanimous verdict on the offense charged—not to satisfy the statute of limitations. Third, by the time the case goes to the jury and the State knows what evidence is before the jury, the State is required to choose the offense for which it is asking the jury to convict. By this time, a specific event is important. By this time, the State must identify with sufficient specificity the offense on which it relies for conviction so that the jury will know with certainty which offense the State is alleging the defendant committed. Thus, we disagree that *Garcia* is reason for holding that this error is non-constitutional.

Unlike the *Cates* and *Wilson* Courts, the Austin Court of Appeals, in *Gutierrez v. State,* held that the right to require the State to elect is constitutional in nature. *Gutierrez v. State,* 8 S.W.3d 739, 747–48 (Tex.App.-Austin 1999, no pet.). Although the *Gutierrez* court does not say the failure to elect is a constitutional error, the cases cited, and its description of them, certainly indicate that the court believed the error was constitutional in nature: "[A] person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend," *citing Jackson v. Virginia,* 443 U.S. 307, 314, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); and "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal," *citing Cole v. Arkansas,* 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948). *See Gutierrez,* 8 S.W.3d at 747–48.

■ We think the answer may depend on the reason an election is required, which may vary from case to case. Returning to the four reasons for requiring election, we think it most likely that the Court of Criminal Appeals would say that election is required (1) to ensure a unanimous verdict and (2) to give notice of the particular offense charged, and, in some cases, as here, there may be the additional reason that (3) the jury might tend to convict, not because it found beyond a reasonable doubt that each of the offenses was committed, but because it was convinced of guilt because of the number of alleged incidents. If the reason underlying the requirement is unanimity, it appears that the error is constitutional in nature.[6] *See Francis v. State,* 36 S.W.3d

---

**6.** The State contends that the right to a unanimous verdict is not constitutional in nature. The United States Constitution clearly does not grant a right to a unanimous verdict. *See Apodaca v. Oregon,* 406 U.S. 404, 410–12, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). The Texas Constitution may grant greater rights than the United States Constitution, of course. *Hulit v. State,* 982 S.W.2d 431, 437 (Tex.Crim. App.1998). The question is therefore whether such a right exists under the Texas Constitution.

The applicable text of the Texas Constitution states only that "Grand and petit juries in the District Courts shall be composed of twelve persons, except that petit juries in a criminal case below the grade of felony shall be composed of six persons; . . . . In trials of

121, 123–25 (Tex.Crim.App.2000) (finding error because it was possible that six members of the jury convicted appellant on one sexual offense and six convicted him of another sexual offense).[7] If the reason underlying election is notice, as stated in *O'Neal,* we agree with the *Gutierrez* court that federal case law seems to support a conclusion that adequate notice and a meaningful opportunity to defend are constitutional in nature.[8] *See O'Neal,* 746 S.W.2d at 772; *Gutierrez,* 8 S.W.3d at 748. If the reason is to avoid the danger that the jury convicted based on the frequency of incidents rather than on evidence that convinced the jury beyond a reasonable doubt that the defendant actually committed the offense, that, too, would seem to be constitutional in nature. As we discuss in more detail below, all three reasons apply here.[9] As a result, we conclude that appellant's right to require the State

to elect was a right of constitutional proportions and we will apply the error analysis used for constitutional error. *See* TEX. R.APP. P. 44.2(a).

 Using the constitutional error standard of review, we must reverse unless we find beyond a reasonable doubt that the error did not contribute to the conviction. *Id.* If the State fails to elect, but the evidence presented clearly indicates which specific incident the State is relying on, the error is not harmful. *Compare O'Neal,* 746 S.W.2d at 772–73 (finding error was harmless because "[b]y the close of the State's case, it was clear that the act upon which the State would rely for conviction occurred on April 24, 1984"), *with Wilson,* 3 S.W.3d at 227 (finding error was harmful because "the State's evidence ... points to two particular incidents for which the jury could have found [the defendant]

---

civil cases in the District Courts, nine members of the jury, concurring, may render a verdict...." TEX. CONST., art V, § 13. This section does not state that a defendant in a criminal case is entitled to a unanimous verdict. It implies so, however, by limiting its provision for a non-unanimous verdict to only civil cases.

The Court of Criminal Appeals has also stated that there is a constitutional right to a unanimous verdict in criminal cases. *See, e.g., Molandes v. State,* 571 S.W.2d 3, 3 (Tex. Crim.App.1978) (referring to "the constitutional right to a unanimous verdict in felony cases"). Even when not expressly stating that the right is constitutional, the Court of Criminal Appeals has cited the above section of the Texas Constitution for support. *See Brown v. State,* 508 S.W.2d 91, 93 (Tex.Crim.App. 1974); *see also Midence v. State,* 108 S.W.3d 564, 565 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (citing section 13 for the proposition that "[u]nanimous verdicts are required in felony criminal cases."). Absent clear guidance from the Court of Criminal Appeals that the right to a unanimous verdict is not constitutional in nature, we follow this authority.

7. Although *Francis* ultimately is not an election case—the appeal dealt with charge issues—it is still useful. In *Francis,* two differ-

ent offenses contained in a single indictment were charged in the disjunctive so that it was possible for part of the jury to believe that one offense occurred and for part to believe the other offense occurred and yet still convict. The court reversed because it said it was "possible" that the jury might not have been unanimous. *See Francis,* 36 S.W.3d at 125. This sounds like constitutional error, especially since the Court noted earlier in the opinion "the importance of a unanimous jury verdict." *Id.* Thus, if one of the reasons for election is to ensure a unanimous jury, the failure to require election would seem to be constitutional error.

8. *O'Neal* was written in 1988 before the current rules for error analysis and therefore does not apply the analysis used today.

9. Arguably, lack of notice does not apply here because appellant never claimed below that he needed an election to help him in establishing an alibi and on appeal; although he argues this as a reason for reversal, he points to nothing in the record that would support the claim and he mentions no specifics.

guilty and innumerable other instances which [the complainant] generally described for which the jury could have found [the defendant] guilty").[10]

### D. On Two of the Indicted Offenses, Error was Harmful.

■ For two of the offenses—digital and oral penetration of the female sexual organ—we clearly do not know the occurrence the jury relied on to convict. Details of more than a few offenses were presented.[11] The testimony was relatively clear about the first time each type occurred, and that these occurred at appellant's apartment. But, after these first instances, both occurred numerous times, always at appellant's apartment. Generally, no specific dates were given, and sometimes the occurrences were not even identified by month; it does, however, appear that they may have occurred weekly, although the record is slightly unclear even on this point.[12] A second date also stands out because the minor complainant testified that these two offenses occurred at a motel; a receipt was introduced into evidence to prove that appellant and the complainant went to the motel. Clear testimony was presented that both types of penetration occurred at the motel. Thus, clear testimony exists for two specific occurrences of both digital and oral penetration, along with further testimony—often vague on the date, much less vague on describing the acts—that they often occurred.

When closing arguments were made, the State did not refer to any specific incidents or offenses. Not once did it point to a date or time or place where even one offense occurred. Instead, the State spent its time pointing out that appellant's defense was unbelievable and that the defense strategy was to vilify the complainant.

■ Thus, both offenses were described in detail more than once; yet, it was completely unclear to the jury which act the State would rely upon for conviction. *Cf. O'Neal*, 746 S.W.2d at 772–73 (finding error harmless because the evidence clearly indicated which act the State

---

**10.** Although the *Wilson* court concluded the error was harmful, that decision was made using the lesser standard for non-constitutional error. *See Wilson*, 3 S.W.3d at 226.

**11.** For all the offenses, the jury received an "extraneous offense instruction" informing it that it could not consider any of the offenses unless it found beyond a reasonable doubt that the defendant committed them and even then it could consider them only "in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant ... in connection with the offense ... alleged in the indictment...." This instruction was appropriate, but it did not clear up any confusion on the jury's part concerning which of the alleged offenses the State would rely on for conviction.

**12.** The following is typical of much of the testimony the complainant gave.

Q. And now, let's move into the summer of 2000 and the fall of 2000. Did everything that you've discussed, that you told ... the jury both yesterday and today, take place like you described? Did it keep happening?
A. During the summer, yes it did, somewhat because we were together. But when I found out there was a possibility of going to move we broke up for a small period of time.
Q. Now ... from the spring and summer of 2000, where did this go on?
A. Mainly at his house whenever his fiancé or girlfriend, Amber, wasn't around.

...

Q. And did ... what you testified to yesterday about him placing his finger in your vagina .... and his placing his mouth on your private, did those things continue, aside from the little break points there[,] in the summer of and fall of 2000?
A. Yes.

would rely upon). This would have allowed the jury to convict because some of the jurors relied on one offense and others relied on another. Under this scenario, we cannot say beyond a reasonable doubt that the error did not contribute to the conviction.[13] *See* Tex.R.App. P. 44.2(a).

**E. On One Indicted Offense, Error was Harmless.**

 The third offense—penetration of the minor's mouth by defendant's sexual organ—presents a more difficult question. On this offense, the complainant testified in detail about only occurrence, but also testified generally that the activity continued at least intermittently from the summer of 2000 until the spring of 2001. The question is whether some members of the jury could have convicted based on the general testimony.

The Court of Criminal Appeals has acknowledged that general statements of repeat occurrences may support a conviction. *See Rodriguez v. State,* 104 S.W.3d 87, 91 (Tex.Crim.App.2003). The Court held "[t]estimony that a defendant delivered cocaine 'maybe 20 or 30 times' is sufficient to support a conviction for a delivery offense." *Id.* That testimony "was not evidence of extraneous offenses and ... appellant's remedy was to require the State to elect the occurrence on which it sought

to rely for conviction." *Id.* In light of *Rodriguez* alone, it is plausible that because the State did not elect, some members of the jury could have convicted based on the detailed testimony, while other members of the jury could have convicted based on the general testimony.

However, in the case most similar to this one, the Court of Criminal Appeals held that the failure to elect was harmless. *See O'Neal,* 746 S.W.2d at 772–73. In *O'Neal,* the complainant gave "a detailed account of an act of intercourse" as well as testifying that intercourse occurred "on a regular basis." *Id.* at 770. The Court held that because it was clear which act the State would rely upon for conviction, "[t]he defendant was on notice of the specific transaction to be relied upon by the State." *Id.* at 772. Although *O'Neal* did not address jury unanimity, based on *O'Neal,* we hold that the jury would have known the specific act on which the State relied. On this particular act of sexual assault, the testimony revealed the details of the sexual act performed at a hotel. As to other occurrences, the testimony was only that the behavior was repeated, without any detail as to how, exactly when, or where. This is quite different from the other two acts for which the complainant gave more than one detailed account.[14]

---

**13.** In fact, on this record, a traditional harm analysis is essentially impossible. Appellant does claim that the failure to elect denied him effective appellate review of the sufficiency of the evidence; however, he does not raise a separate sufficiency claim, and, more importantly, he does not cite any authority or record references to aid us in any review. As a result, he has waived this particular claim. However, this is an additional reason that the failure to elect can harm a defendant; when an offense has occurred numerous times, as here, appellate review can be hampered to such an extent that it is impossible to do.

**14.** An argument could be made that *Rodriguez,* holding that general testimony of "it

happened maybe 20 or 30 times" was sufficient, 104 S.W.3d at 91, conflicts with *O'Neal,* holding that no election was required when details of one offense were given but otherwise the testimony showed that it occurred "on a regular basis," 746 S.W.2d at 770, 772–73. In *Rodriguez,* the argument was made that "the usual remedy of an election in cases like this does not apply here because 'it would have been impossible for the State to make an election in the absence of any testimony distinguishing one incident from another.'" 104 S.W.3d at 91. The court held that the State "could have easily made an election." *Id.* It could have elected " 'at least one occurrence' instead of 'maybe 20 or 30' occur-

■ Thus, we follow the reasoning in *O'Neal* and hold that error in failing to require the State to elect is harmless when there is detailed testimony as to one occurrence and general, very vague and unspecific testimony as to other occurrences. Because the State focused its attention on one particular occurrence, it would have been clear to both appellant and the jury that the State was relying on that occurrence to convict. Error as to the third offense was therefore harmless.

## III. IMPROPER JURY ARGUMENTS

Next, appellant complains that the trial court erred in not granting a mistrial based on arguments the prosecutor made in his closing. The trial court cured any error as to two of the improper arguments by instructing the jury to disregard them. The last two arguments were improper, and before the jury without any instruction, but we find the error harmless.

■ Proper jury argument must fall within one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to opposing counsel's arguments; or (4) a plea for law enforcement. *Brandley v. State*, 691 S.W.2d 699, 712 (Tex.Crim.App.1985). Improper closing arguments include references to facts not in evidence or incorrect statements of law. *Parks v. State*, 843 S.W.2d 693, 695 (Tex.App.-Corpus Christi 1992, pet. ref'd). For an improper jury argument to mandate reversal, it must be extreme, violate a mandatory statute, or inject new facts into the record. *Brandley*, 691 S.W.2d at 712–13.

■ When a prosecutor makes uninvited and unsubstantiated accusations of improper conduct directed toward a defendant's attorney, in an attempt to prejudice the jury against the defendant, courts refer to this as striking a defendant over the shoulders of his counsel. *See Gomez v. State*, 704 S.W.2d 770, 771–72 (Tex.Crim. App.1985). This can be seen, for example, when the prosecutor argues that defense counsel has manufactured evidence, suborned perjury, accepted stolen money, or represented criminals. *See Washington v. State*, 822 S.W.2d 110, 119 (Tex.App.-Waco 1991), *rev'd on other grounds*, 856 S.W.2d 184 (Tex.Crim.App.1993); *see also Wilson v. State*, 938 S.W.2d 57, 58 (Tex.Crim.App. 1996) (finding the statement "[defense counsel] wishes . . . that you turn a guilty man free . . . because he doesn't have the obligation to see that justice is done" was improper); *Anderson v. State*, 525 S.W.2d 20, 21–22 (Tex.Crim.App.1975) (finding the State struck over the shoulders of the defense when the State accused the defense attorneys of lying). Generally, a trial court cures any error from an improper jury argument when it instructs the jury to disregard the comment. *See Wilkerson v. State*, 881 S.W.2d 321, 327 (Tex.Crim.App.1994).

Appellant contends the following comments by the State struck at him over the shoulders of his counsel:

1. "I am not going to talk very long, and I'll basically leave you with a couple things I would ask you to think about in good heart—good

---

rences." *Id.* Yet, in *O'Neal*, the court held that testimony that the offense occurred "on a regular basis" would not confuse the defendant about which offense the State had chosen to prosecute because it presented details of only one offense and argued only that offense in closing argument. 746 S.W.2d at 770, 772–73. Thus, in one case, testimony of

"maybe 20 or 30 occurrences" is sufficient by itself to convict and only requires an election, but in another case, testimony that the offense occurred "on a regular basis" apparently is not detailed enough to require an election when coupled with detailed testimony of one incident. *See Rodriguez*, 104 S.W.3d at 91; *O'Neal*, 746 S.W.2d at 770, 772–73.

heartedly while they get up and talk to you for about 30 minutes, and that is this. First, there are hours and hours of needless, miserable, hopeless and pathetic pecking at the State's case."

2. "Where do I start? You know, if a man is caught in a trap he steps in it, didn't see it coming.... He may bark and cry, chew on the tree, chew his own paw off, chew through the chain, whatever. He will do anything. And it may be a crude comparison but if you think hard about it, good and hard about it, it's not unlike this case that you have here. Because when you're caught you do everything in your power to get out. You have your lawyers make personal attacks on me, you get up and make ten-minute speaking objections, you—"

3. "—she's got to get it again when she came in here. They nailed her up on a cross, they called her whore, they called her a dream girl, they called her a liar."

4. "Armed with that awesome ability to do right what are you going to do? Are you going to validate the most lame, ridiculous, self-serving, pathetic story from him, the guy who while he testified did not have the guts to look you in the eye? Are you going to believe a 15, 16 year old girl, she's 17 now, who has the courage to come in here and get nail[ed] to a cross and gutted for no reason."

Appellant's attorney properly objected to all four statements. The trial court sustained appellant's objection to the first two statements, instructed the jury to disregard, and denied the motions for mistrial. The trial court overruled appellant's objections to the last two statements. We will discuss separately the first two statements for which the jury received an instruction to disregard, from the last two statements for which the jury did not.

**A. Arguments with an Instruction to Disregard.**

In most instances, an instruction to disregard an improper jury argument will cure any error. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex.Crim.App. 2000). Only offensive or flagrant error will mandate reversal after a trial court's instruction to disregard. *Id.* at 116. Here, the trial court quickly sustained appellant's two objections and instructed the jury to disregard the State's comments. Although error, the comments were not so highly inflammatory that a jury could not ignore them. *Garcia v. State*, 943 S.W.2d 215, 217 (Tex.App.-Fort Worth 1997, no pet.) (holding that when assessing the curative effect of a statement, the correct inquiry is whether or not the statement was so inflammatory than an instruction to disregard could not cure its prejudicial effect). Since the record shows no evidence to the contrary, we assume the jury followed the trial court's instruction to disregard. *See Gardner v. State*, 730 S.W.2d 675, 696 (Tex.Crim.App.1987), *cert. denied*, 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987). Therefore, the trial court cured any error, and we overrule these two issues by appellant.

**B. Arguments without an Instruction to Disregard.**

We now address the State's last two comments that did not receive an instruction to disregard. Practically speaking, it is impossible to articulate a precise rule to determine when a prosecutor is striking over the defense counsel's shoulders and when he is making a proper jury argument. However, we find that parts of the State's arguments—"nailed her up on a cross," "nail[ed] to a cross," and "called

her whore"—were improper and probably did strike at appellant over his counsel's shoulders. That is, the comments were targeted at defense counsel's handling of the case, and were made toward defense counsel personally. *See Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App.1998). The trial court erred by overruling the appellant's objections to these two arguments.

That means we must determine whether the trial court's error warrants reversal. *See* TEX.R.APP. P. 44.2. The Texas Court of Criminal Appeals characterized erroneous rulings regarding improper jury argument as non-constitutional or "other error" within Rule 44.2(b).[15] *Mosley,* 983 S.W.2d at 259; *Ortiz v. State,* 999 S.W.2d 600, 605–06 (Tex. App.-Houston [14th Dist.] 1999, no pet.). Rule 44.2(b) requires us to examine the error in relation to the entire proceeding to determine whether it had a "substantial and injurious effect or influence in determining the jury's verdict." *See King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App. 1997); *Ortiz,* 999 S.W.2d at 606. In other words, if we are assured the error did not influence the jury, or only had a slight effect, we must affirm the trial court. *See Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

In *Mosley,* the court relied on the following three factors to analyze the harm associated with improper jury argument and to determine whether reversal was required: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Mosley,* 983 S.W.2d at 259.

Thus, we look first at the severity of the comments. *See id.* at 259. As we stated earlier, calling the complainant a "whore" and stating that the defendant was "nailing her to a cross" are improper statements. "Whore" we find somewhat inflammatory; and "nailing her to a cross" is rather inflammatory and the most capable of inciting emotion. We find them moderately extreme.

Second, the trial court overruled appellant's objections, so it did not cure the State's misconduct. *See id.* But it did minimize their impact somewhat by instructing the jurors at the time of the objection to decide the case on the evidence they heard from the witness stand.

Finally, we must look at the certainty of appellant's conviction absent the misconduct. *See id.* A good deal of evidence showed that appellant did in fact sexually assault the complainant. A motel receipt confirmed appellant spent a day with the complainant where he sexually assaulted her. A telephone conversation between appellant and the complainant was recorded by police, in which appellant admitted teaching the complainant about sex and, in which, in response to her query about when they would have another threesome, appellant said they would talk about "The Three Musketeers" later. Doctors testified about the physical evidence linking the assault to appellant.

Thus, we find the comments to be error. But, even though improper, even though poor advocacy, they are not so inflammatory as to require reversal. And even though the trial judge did not sustain the objection—which he should have—when

---

**15.** Some improper jury arguments could be considered constitutional error if the prosecutor's remarks violated a constitutional issue. *See Ortiz v. State,* 999 S.W.2d at 606 n. 3; *Thompson v. State,* 89 S.W.3d 843 (Tex.App.- Houston [1st Dist.] 2002, pet. ref'd).

the prosecutor said the inappropriate comment, the trial judge did at least instruct the jurors that they would decide the case on the evidence they heard from the witness stand. It was not as good as instructing them to disregard. It was not as good as reminding them that this was merely argument from lawyers and not evidence. But, it was enough to minimize some of the impact. And when we consider the evidence in support of conviction, along with these other considerations, we cannot conclude that the State's improper arguments influenced the jury to find appellant guilty. The jury found appellant guilty because of the evidence that came from the witness stand.

Accordingly, we find the error harmless, and we overrule these two issues.

## IV. ALLEGED IMPROPER COMMENT ON RIGHT TO JURY TRIAL

■ Finally, appellant also complains the State improperly commented on his right to a jury trial. The State argued, in part, the following:

> [State]: Now, let's go back to it. It's like they nailed her up to a cross and put a crown of thorns on her head and let the birds peck at her. And it's no wonder that these cases don't get reported. It's not only that she had to get victimized over and over and over by him—

Despite appellant's timely objection, the trial court allowed the statement.

As evidenced in our earlier discussion, part of this comment probably was improper, but it was not a comment on appellant's right to a jury trial. *See Taylor v. State,* 987 S.W.2d 597, 599 (Tex.App.-Texarkana 1999, pet. ref'd). That is the only objection appellant made to the comment. We overrule appellant's final issue.

## CONCLUSION

In conclusion, all issues other than the election issues are overruled. As to election, we overrule appellant's issues regarding appellant's penetration of the complainant's mouth. We sustain appellant's issues as to the digital and oral penetration of the complainant's sexual organ, and reverse those two convictions and remand the cases to the trial court.

RICHARD H. EDELMAN, Justice, dissenting.

I disagree with the majority's reversal of two of appellant's convictions. As correctly recognized in the majority opinion, the election requirement can implicate several distinct rights of a defendant including: being provided fair notice of the charged offense, assuring that extraneous offense evidence not be used as proof of guilt, and assuring that a conviction be based on a unanimous jury verdict. Although issues two, three, and nine of appellant's brief all assign error to the trial court's failure to require the State to make the required election and provide the corresponding instructions in the jury charge, these three issues collectively claim that appellant was denied only his rights to fair notice of the offense and opportunity to defend, limitation on the use of extraneous offense evidence, and effective appellate review of the sufficiency of the evidence. Although none of these issues allude in any way to appellant's right to a unanimous jury verdict, the majority's harm analysis and resulting reversal is based largely on the harm potentially arising from a denial of that right. Because I believe these issues should instead be decided based on the rights which they contend were violated and any harm arising therefrom, I do not agree with the majority's sustaining of those issues on the unasserted violation of the right to a unanimous jury verdict.

Nor do I believe that a violation of that right can always be presumed upon a failure to elect among multiple incidents, as the majority suggests, even where, as here, there is no difference in the credibility of the evidence of the various incidents, such that jurors would have had any reason to differ on whether a defendant was guilty of one versus another.