Reversed and Remanded and Majority, Concurring, and Dissenting Opinions
filed July 21, 2005









 

Reversed and Remanded and Majority, Concurring, and
Dissenting Opinions filed July 21, 2005.

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01259-CR

____________

 

ANTHONY DIXON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 23rd
District Court

Brazoria County, Texas

Trial Court Cause No. 43,408

 



 

D I S S E N T I N G   O P I N I O N








Where one act of intercourse is alleged in
the indictment and more than one act of intercourse is shown by the evidence in
a sexual assault trial, the general rule is that the State must elect the act
upon which it will rely for conviction.  O=Neal v. State, 746 S.W.2d 769,
771 (Tex. Crim. App. 1988).  The reason
for the rule is to protect the accused (1) from the introduction of extraneous
offenses, (2) from prejudice arising solely from the sheer number of alleged offenses,
(3) by ensuring a unanimous verdict, and (4) by giving him notice of the
particular offense upon which the State intends to rely.  Phillips v. State, 130 S.W.3d 343, 349
(Tex. App.CHouston [14th Dist.] 2004, pet. ref=d).  These are all laudable reasons for the rule
requiring an election by the State. 
However, A. . . the rule follows where its reason
leads;  where the reason stops, there
stops the rule.@[1]

Here, the complainant, a six-year-old
child, was sexually assaulted on a regular basis.  Of the approximately one hundred assaults,
all took place in the complainant=s bed and all, but
one, occurred at night.  On account of
the complainant=s minority, she could not temporally
distinguish one assault from another.  In
light of the circumstances, what kind of election was possible?  Appellant suggests the State could have
elected to rely upon the one Adaytime@ offense.  Certainly, that would have been one means of
distinguishing a specific offense. 
However, I can find no authority to suggest that the State, due solely
to the victim=s minority, must elect the one Adaytime@ offense to the
exclusion of ninety-nine Anighttime@ offenses.  Moreover, the State had other means of
electing a specific offenseCit could, for
example, have chosen the first assault, the tenth assault, the fifty-seventh
assault, etc.  In this regard, an
election was Atheoretically@ possible.  Thus, in Atheory,@ the trial court
erred in refusing to compel the State to make such an election.  However, appellant bears the burden of
showing some actual, not just theoretical, harm.  Hughes v. State, 897 S.W.2d 285, 296
(Tex. Crim. App. 1994); Webber v. State, 29 S.W.3d 226, 236 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d); Johnson v. State, 981 S.W.2d
759, 764 (Tex. App.CHouston [1st Dist.] 1998, pet. ref=d). 








Appellant suggests he was prejudiced by
the possibility of a non-unanimous verdict. 
Unanimity in this context means that each and every juror must agree
that the defendant committed the same, single, specific criminal act.  Thanh Cuong Ngo v. State, No.
PD-0504-04, 2005 WL 600353, at *4 (Tex. Crim. App. Mar. 16, 2005).  The nature of the evidence presented here,
however, defies any attempted unanimity of the verdict.  The complainant testified generally about
what occurred during a typical assault. 
She then added that she was the victim of approximately one hundred such
assaults.  An older victim may well have
been able to distinguish one offense from another by date, some distinctive
fact, some unusual bit of conversation, etc. 
Here, however, the victim was a very young child.  If the State had Aelected@ to rely upon
assault number twenty-nine, the jurors would have had no better means of
distinguishing it from the ninety-nine extraneous assaults than did the
complainant.  Thus, in an abstract sense,
four jurors could have convicted appellant based on the evidence offered
regarding assault number forty-three, four jurors could have convicted him on
the evidence of assault number sixty-nine, and four jurors could have convicted
him on the evidence of assault number eighty-two because the evidence for all
these assaults was the same.  Because the
jurors could not possibly distinguish one offense from another, unanimity of
their verdict regarding a specific offense was also impossible.








Perhaps this fact alone should dictate our
disposition of this case.  However,
unless we are prepared to say that young victims may be violated with impunity,
I am not disposed to hold that the constitutional right to a unanimous verdict
precludes the prosecution of cases like the one presented here.  First, while the constitution requires that
district court juries Abe composed of twelve persons,@[2] it does not
expressly require unanimity to the degree specified in Ngo, i.e.,
Athe same, single,
specific criminal act.@  Ngo,
2005 WL 600353, at *4.[3]  Likewise, no statute expressly requires this
degree of unanimity.[4]

Further, because the assaults were
indistinguishable from one another, jeopardy automatically attached to every
assault.  Walker v. State, 473
S.W.2d 499, 500 (Tex. Crim. App. 1971). 
Thus, appellant was not prejudiced by the danger of repeated
prosecutions.  Ex parte Goodbread,
967 S.W.2d 859, 860B61 (Tex. Crim. App. 1998); Ex parte
Nagle, 48 S.W.3d 213, 216 (Tex. App.CSan Antonio 2000,
no pet.).








Had the State Aelected@ the first
assault, the tenth assault, or the last assault, appellant would have had no
greater notice of the offense upon which the State intended to rely; no greater
assurance of real unanimity of the verdict; and no more meaningful
limiting instruction regarding Aextraneous@ offenses.  In short, an election under the facts
presented here would not have aided appellant one whit.[5]

I am not unmindful of our responsibility to
see that appellant has had a fair trial. 
Further, I would favor a reversal of appellant=s conviction if a
meaningful election (1) could have been made, and (2) it would have
accomplished the aims alluded to in Phillips.  130 S.W.3d at 349.  But such is not the case here.  The harm espoused by appellant is absolutely
theoretical.  Appellant contends a
reversal of the conviction is just, A[b]ut justice,
though due to the accused, is due to the accuser also.  The concept of fairness must not be strained
till it is narrowed to a filament. We are to keep the balance true.@  Snyder v. Massachusetts, 291 U.S. 97,
122 (1934).  Here, a reversal of the conviction
would protect no substantial or constitutional right of the accused.  Accordingly, I would find the error harmless
beyond any reasonable doubt.

For these reasons, I respectfully dissent.

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

Judgment
rendered and Majority, Concurring, and Dissenting Opinions filed July 21, 2005.

Panel consists of Justices
Anderson, Hudson, and Frost.  (Anderson,
J., majority.)  (Frost, J., concurring.)

 

Publish
C Tex. R. App. P. 47.2(b).

 

 











[1]  K. Llewellyn, The Bramble Bush at 157B58 (Dobbs Ferry, New York:  Oceana,
1981).





[2]  See Tex. Const. art. V, ' 13:

Grand and
petit juries in the District Courts shall be composed of twelve persons, except
that petit juries in a criminal case below the grade of felony shall be
composed of six persons;  but nine
members of a grand jury shall be a quorum to transact business and present
bills.  In trials of civil cases in the
District Courts, nine members of the jury, concurring, may render a verdict,
but when the verdict shall be rendered by less than the whole number, it shall
be signed by every member of the jury concurring in it.  When, pending the trial of any case, one or
more jurors not exceeding three, may die, or be disabled from sitting, the
remainder of the jury shall have the power to render the verdict;  provided, that the Legislature may change or
modify the rule authorizing less than the whole number of the jury to render a
verdict.





[3]  In Ngo,  the appellant attempted to use a stolen
credit to purchase a couple of beers at a karaoke bar.  Ngo, 2005 WL 600353.  He was charged with credit card abuse.  The Legislature has broadly defined the
offense of credit card abuse as being committed when a person presents or uses
a credit card knowing he does not have the consent of the cardholder, knowing
the card is fictitious, knowing the card is stolen, knowing the card has been
revoked, etc.  Ngo was indicted for
credit card abuse by (1) stealing a credit card, (2) receiving a stolen credit
card, and (3) fraudulently presenting a credit card to pay for goods or
services.  Historically, this would have
been viewed as an allegation of various manner and means of committing a single
offense.  See Hendrix v. State,
150 S.W.3d 839, 855B58 (Tex. App.CHouston
[14th Dist.] 2004, pet. pending) (Hudson, J., concurring).   The rationale being that the State ought to
be permitted to allege all of the various statutory violations arising in a
single criminal transaction (i.e., in a single Aoffense@) in one indictment to meet the contingencies of
evidence that might develop in trial with the view of securing but one
conviction.  Id.

In light of Ngo and similar
decisions by the Court of Criminal Appeals, a potential double jeopardy crisis
is now brewing.  See, for example,
Vick v. State, 991 S.W.2d 830 (Tex. Crim. App. 1999).  If each manner and means of committing credit
card abuse is now a separate offense for purposes of jury unanimity, then it is
necessarily a separate offense for jeopardy purposes.  Thus, in Ngo, for example, the
appellant could be separately charged, convicted, and punished for multiple
offenses of credit card abuse arising out of a single transaction.  No mystical seer is needed to predict that,
in time, the right of jury unanimity will be relaxed in favor of more stringent
double jeopardy protections.





[4]  See Tex. Code Crim. Proc. Ann. art. 33.01
(Vernon 1989):

(a) Except
as provided by Subsection (b), in the district court, the jury shall consist of
twelve qualified jurors.  In the county
court and inferior courts, the jury shall consist of six qualified jurors.

(b) In a
trial involving a misdemeanor offense, a district court jury shall consist of
six qualified jurors.

 





[5]  Appellant
argues the State could have elected to prosecute the one Adaytime@ offense
to distinguish it from the ninety‑nine Anighttime@ offenses. 
Certainly, that is true, but to what advantage?  Appellant does not inform us how an election
of the Adaytime@ offense
have aided him in any greater fashion than if the State had elected the twenty‑seventh
offense.