# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00078-CR

**Dwayne Perry, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 147TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-17-904068, THE HONORABLE CLIFFORD A. BROWN, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Dwayne Perry appeals his convictions for continuous sexual abuse of a young child, indecency with a child by sexual contact, two counts of indecency with a child by exposure, and sexual assault of a child, committed against his live-in girlfriend's daughter, M.T. *See* Tex. Penal Code §§ 21.02(b), 21.11(d), 22.011(a)(2). After a weeklong jury trial, the court assessed Perry's punishment at twenty-five years' imprisonment for the count of continuous sexual abuse of a young child, ten years' imprisonment for the count of indecency with a child by sexual contact, five years' imprisonment for each count of indecency with a child by exposure, and ten years' imprisonment for the count of sexual assault of a child, with all sentences to run concurrently.

On appeal, Perry contends that the district court erred by denying his motion for mistrial after the prosecutor implied in closing argument that defense counsel encouraged M.T. to lie during cross-examination. We will affirm the district court's judgments of conviction.

**BACKGROUND**

In 2015 when M.T. was fifteen, she spent alternating weeks with her Father at his home and with her Mother at her home. Mother had an intermittent but long-term relationship with Perry, and they had two children together, M.T.'s younger half-siblings. Mother and Perry continued cohabitating with their children and M.T., even when Mother and Perry were no longer romantically involved and dating other people.

In early 2016, while M.T. was staying with Father, she had her cell phone in the bathroom, which was against his house rules. Father asked her to unlock her phone, and he saw nude photos that M.T. had sent of herself and that someone else had sent to her. Father called Mother, and they met at his home to discuss the matter with M.T. and determine her punishment. Mother gave M.T. two swats on the buttocks, and Father lectured M.T. for several hours about the risks of her actions. Father and Mother informed M.T. that her punishment would include no cell phone use or social-media access; restrictions on her clothing, hairstyle, and makeup; and no showers longer than five minutes. Father testified that M.T. was upset, but she knew she "messed up" and accepted the consequences.

Father and Mother asked M.T. if she had had sex with anyone, which M.T. denied. M.T. stated that she had seen Perry naked once, but it was accidental, because she had gone downstairs when he had just gotten out of the shower. M.T. testified that she did not tell

her parents about the abuse during that conversation because she knew her mother would return home to Perry and M.T. did not know what would happen then.

After M.T. went to bed and Mother went home, Father looked into M.T.'s phone further. He found several more explicit photos taken over the preceding three months and a video that appeared to show M.T. masturbating. Later when Father woke M.T. for school, he asked her whether anyone had ever touched her vagina. Through sobs, M.T. told him "yes" and identified Perry. Father testified that he was concerned about forgetting details and about how he was going to tell Mother, so he used his phone to record the rest of his conversation with M.T.[1]

M.T. testified at trial that Perry had penetrated her vagina with his fingers, groped her breasts and vagina multiple times, and put his head between her legs and licked her vagina on two occasions, once in her room at Mother's house in 2013 and once on a summer trip to Florida in 2014 with Perry, Mother, and M.T.'s half-siblings. M.T. testified that at some point after the first oral sex incident, she moved her bed so that it would be visible from the master bedroom if both bedroom doors were open.

M.T. testified that she was around twelve when Perry began touching her. She stated that she had gotten into bed with Mother and Perry because she had a bad dream and that she was lying between them when Perry's hand touched her around her waistband area "trying to find the opening of her pants." M.T. said that Perry also grabbed her hand and pulled it towards his crotch and that her hand briefly touched his penis through his boxers.

M.T. told the jury about another incident when her mother was at work and Perry got into bed with her, put his hand underneath her t-shirt, and touched her breasts. Later, Perry asked M.T. if anything happened, and she did not want to talk about it, so she told him that she

---

[1] The audio recording was admitted into evidence at trial.

did not know if anything happened. Perry said, "[I]f anything happened, don't tell your mom." M.T. described another incident that occurred when her mother was not home during which Perry asked her to push play on his television show, and M.T. saw two undressed people in the show "being intimate with each other." M.T. stated that she paused the show and went upstairs, that Perry followed her and asked her what happened, and that M.T. told him she did not know what he was watching. She said that Perry told her, "[L]et's not mention this to your mom."

M.T. further testified that sometimes Perry drove her to school while he was wearing a pair of white shorts with nothing underneath them and his penis would stick out of his shorts. M.T. stated that the exposure was not accidental and that Perry always wanted a hug when he dropped her off. Several days during the weeks when M.T. stayed at Mother's house, Perry would go into M.T.'s room and touch her, sometimes over her clothes and sometimes underneath them. M.T. tried to prevent Perry from coming into her room by locking her door, putting a rolled-up blanket in front of the door, and moving her desk in front of the door. She also recalled wearing extra clothes to bed and sleeping on the bed in a sleeping bag with the zipper facing the wall. M.T. testified that the last time Perry touched her was before the outcry when she stayed at Mother's house in January of 2016. M.T. testified that her relationship with Mother deteriorated after M.T. made her outcry against Perry. M.T. testified that she still loves her half-siblings and Mother, but Mother had not spoken to her for almost a year and a half.

Father testified that M.T. had been "struggling greatly" with her grades before this abuse was disclosed. Her grades improved by the time of trial when she was no longer in a household with Perry. She was getting straight As and taking all pre-AP and AP courses at school.

Mother testified that she currently had "no relationship" with M.T. and that she had filed paperwork to terminate her parental rights to M.T. The prosecutor asked whether Mother would want to determine "what the issue was" with M.T., even if Mother had doubts about M.T.'s outcry. Mother replied, "I don't believe her, so I'm not going to put myself in a situation to support something that I do not believe." Mother further testified, "I mean, from the moment I heard the outcry, I said, she's lying." As to Perry, Mother testified, "I never had a doubt that he didn't do it." However, Mother acknowledged that at some point M.T. used a sleeping bag in her bed, that M.T. rearranged the furniture in her room, that Perry had some white "lounge around" shorts that he sometimes wore when he drove M.T. to school, that Perry took M.T. to school more often during her freshman year, and that Perry wore boxer briefs around the house. Mother also testified that Perry told her about an incident in which he walked downstairs naked when M.T. did not know he was present.

Krista Wold, a forensic interviewer with the Center for Child Protection, testified that M.T. reported to her at least three specific instances of Perry exposing himself to M.T. or M.T. seeing Perry's penis. Wold also testified that M.T. described two incidents involving waking up to Perry licking her vagina, one of which happened on the trip to Florida.

Lisa Butterworth, a pediatric nurse practitioner and a sexual assault nurse examiner, testified that M.T. told her Perry had sexually abused her. Specifically, M.T. told Butterworth that Perry "touch[ed] her while she was asleep" and "touched her vagina and her breasts with his fingers." M.T. reported that this usually happened in her bedroom and that it happened "a few times a week" for the past two or three years. M.T. recalled that the last incident of assault was about seven-and-a-half weeks before the exam.

During closing argument in the guilt-innocence phase of the trial, Perry moved for a mistrial when a prosecutor remarked that defense counsel was either unfamiliar with the content of M.T.'s statement to the forensic interviewer or defense counsel was encouraging M.T. to lie during cross-examination. The court denied the motion for mistrial. At the conclusion of trial, the jury found Perry guilty on all counts charged in the indictment, and the court assessed Perry's punishment. Perry filed a one-sentence motion for new trial stating: "Under Rule 21 of the Texas Rules of Appellate Procedure, Defendant requests a new trial on the basis that the Court erred in [not] granting a mistrial after improper closing argument attacking defense counsel." That motion was denied by operation of law. This appeal followed.

**Mistrial based on closing argument**

Perry contends that the district court erred by denying his motion for mistrial after a prosecutor implied in closing argument that defense counsel encouraged M.T. to lie during cross-examination. A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009). A mistrial is appropriate only in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors and should be granted only if residual prejudice remains after less drastic alternatives have been explored. *Ocon v. State*, 284 S.W.3d 880, 884-85 (Tex. Crim. App. 2009). Such alternatives include instructing the jury to consider as evidence only the testimony and exhibits admitted through witnesses on the stand, and, if an instruction alone does not sufficiently cure the problem, questioning the jury about the extent of any prejudice. *Id*. at 885. Whether an error requires a mistrial is determined by the particular facts of the case. *Id*. at 884.

Here, because the district court ultimately sustained Perry's objection and instructed the jury to disregard the argument, the only adverse ruling was the court's denial of the motion for mistrial. *See Archie v. State*, 340 S.W.3d 734, 738 (Tex. Crim. App. 2011) (reviewing only denial of motion for mistrial, made after court sustained defendant's objection and issued jury instruction to disregard prosecutor's improper closing argument). We review the denial of a mistrial for an abuse of discretion. *Id*. at 738-39; *Ocon*, 284 S.W.3d at 884. We consider the evidence in the light most favorable to the trial court's ruling and look to the arguments before the court at the time of its ruling. *Ocon*, 284 S.W.3d at 884. We must uphold the ruling if it was within the zone of reasonable disagreement. *Id*.

Perry moved for mistrial during closing arguments in the guilt-innocence phase of trial, when a prosecutor commented about defense counsel incorrectly suggesting that M.T. omitted making certain statements to the forensic interviewer:

| | |
|---|---|
| [Prosecutor]: | What happened is, they crossed [M.T.], and they specifically asked her, well, you didn't say this to the forensic interviewer, and you didn't say that to the forensic interviewer. But, she did. So, they either didn't know the forensic interview very well, or they were trying to get her to lie on the stand. |
| [Defense counsel]: | I'm going to object to that. That's an attack on me and trying to get to the defendant over my shoulders. |
| The Court: | Ladies and gentlemen, again, this is argument of counsel. You will decide, ultimately, what the facts are in this case. All right. |
| [Defense counsel]: | Can I have a ruling? |
| The Court: | It's overruled. |

The prosecutor resumed her closing argument, noting that victims' statements may be challenged whether they are consistent or inconsistent:

7

Now, the thing about these cases is, for lack of better terminology, you're kind of damned if you do and kind of damned if you don't. If you continue to say the same story over and over and over again, then you must be lying. If you change your story, then you must be lying. So, either way you go, it's bad. So, if a child says over time to every single person they meet and they talk to, he did this, he did this, he did this, he did this, the defense comes in and says, hmmm, how convenient, what a perfect little lie you put together, you told the same story every single time because that was your story and it was manufactured.

The district court then interrupted to clarify that the attorneys were not trying to get anyone to lie and that defense counsel was not a lawyer who engaged in that conduct:

Excuse me. I do want to say something. I read the question again. I want to be clear about something, the attorneys have a job to do. I don't want to leave you with the misimpression that attorneys are actively trying to get somebody to lie. I certainly don't think [defense counsel] is a lawyer who engages in that. He has a job to do, but, again, it's argument, and you can decide ultimately.

At the conclusion of closing argument and before releasing the jury for deliberations, the district court stated that it sustained defense counsel's objection to the prosecutor's argument that the defense was trying to get M.T. to lie:

The Court:           I do want to correct one thing for the record and that is, when I gave that limiting instruction, if you will, during argument, I am sustaining the objection by [defense counsel] relative to the argument that they were trying to get the witness to lie. You will disregard that portion of the argument. With that, you will retire to the jury room to begin your deliberations.

[Defense counsel]:   We move for a mistrial on the basis of that argument.

The Court:           The mistrial is denied.

Our evaluation of whether a trial court abused its discretion by denying a motion for mistrial based on improper jury argument requires balancing three factors: (1) the severity of the misconduct (magnitude of the prejudicial effect of the prosecutor's remarks); (2) the

8

measures adopted to cure the misconduct (efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (strength of the evidence supporting the conviction). *Archie*, 340 S.W.3d at 739; *see also DeLeon v. State*, No. 03-13-00202-CR, 2015 Tex. App. LEXIS 5458, at *21 (Tex. App.—Austin May 29, 2015, pet. ref'd) (mem. op., not designated for publication) (noting that where comment leads to two plausible inferences, one of which is permissible, we do not presume that jury would necessarily choose improper inference).

### 1. Severity of misconduct

Permissible jury argument includes: (1) summation of the evidence presented at trial; (2) reasonable deductions drawn from that evidence; (3) answers to opposing counsel's argument; and (4) pleas for law enforcement. *Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010); *Whitney v. State*, 396 S.W.3d 696, 704 (Tex. App.—Fort Worth 2013, pet. ref'd). But a prosecutor may not "strike at a defendant over the shoulders of his counsel" by making uninvited and unsubstantiated accusations of improper conduct against defense counsel to prejudice the jury against the defendant. *Davis*, 329 S.W.3d at 821; *Whitney*, 396 S.W.3d at 704. A prosecutor impermissibly strikes at a defendant over his counsel's shoulders by arguing that counsel suborned perjury, manufactured evidence, accepted stolen money, or represented criminals. *Whitney*, 396 S.W.3d at 704 (citing *Phillips v. State*, 130 S.W.3d 343, 355 (Tex. App.—Houston [14th Dist.] 2004), *aff'd*, 193 S.W.3d 904 (Tex. Crim. App. 2006)).

Here, the prosecutor remarked that defense counsel was either unfamiliar with the content of M.T.'s statement to the forensic interviewer or that defense counsel was encouraging M.T. to lie during cross-examination. Although the prosecutor's remark was improper, the isolated reference did not constitute severe misconduct. Further, given the defense's strategy of suggesting that M.T. was an untruthful person, the magnitude of any prejudicial impact from a

remark about "trying to get her to lie" while on the stand was limited. Throughout trial, the jury heard defense counsel ask witnesses about false allegations, false outcries, and confirmation bias. Further, before the prosecution made the complained-of remark, defense counsel stated during their closing argument that M.T. "knows what she needs to say" and that she "is up her[e] lying—well, not lying, she's just leaving some things out." We cannot conclude that any prejudice from the prosecutor's remark was so great as to render the district court's subsequent curative instruction ineffective.

### 2. Measures adopted to cure misconduct

The next factor we consider addresses any measures the trial court took to cure the complained-of misconduct. The law generally presumes that a trial court's instructions to disregard will be duly obeyed by the jury and that such instruction to disregard cures any error from an improper jury argument. *Whitney*, 396 S.W.3d at 706. That presumption may be rebutted if the defendant points to evidence—e.g., in a motion for new trial—indicating that the jury disregarded the trial court's instructions. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005); *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).

Here, the district court took proper measures to cure the complained-of harm from the prosecutor's argument. Although the court initially overruled the objection to the prosecutor's argument, the court soon afterward interrupted to clarify that the attorneys were not trying to get anyone to lie, that defense counsel was not a lawyer who engaged in that conduct, and that the jury was hearing only argument, not evidence. Then at the conclusion of closing argument, the court stated that it sustained defense counsel's objection to the prosecutor's argument that the defense was trying to get M.T. to lie and instructed the jury to "disregard that portion of the argument." These instructions to the jury were clear and direct, and Perry did not

10

request an additional or alternatively worded instruction before requesting the mistrial. *See Thomas v. State*, 461 S.W.3d 305, 312 & n.11 (Tex. App.—Fort Worth 2015, no pet.) (noting that defendant did not offer additional or alternatively-worded instruction before moving for mistrial); *cf. Evans v. State*, No. 01-13-00593-CR, 2015 Tex. App. LEXIS 3148, at *28 (Tex. App.—Houston [1st Dist.] Mar. 31, 2015, pet. ref'd) (mem. op., not designated for publication) (concluding that defendant was not harmed by lack of instruction to disregard complained-of comment by prosecutor during closing argument because court issued curative instructions reminding jury that counsel's arguments were not evidence). Perry's single-sentence motion for new trial offered nothing to rebut the presumption that the jury followed the district court's instructions. Thus, we conclude that the instructions the district court provided to the jury were sufficient to cure any harm from the complained-of misconduct.

### 3. Certainty of conviction absent misconduct

The final factor we consider is the certainty of conviction absent the complained-of misconduct. Here, even without the prosecutor's complained-of remark, the evidence supporting Perry's conviction was persuasive. M.T. testified that between the time she was twelve and sixteen years old Perry touched her breasts and genitals, exposed himself to her, performed oral sex on her, and penetrated her genitals with his finger. Her testimony alone is sufficient to support Perry's convictions for continuous sexual abuse of a child, indecency with a child by contact or by exposure, and sexual assault of a child. *See* Tex. Code Crim. Proc. arts. 38.07(a) (providing that conviction is supportable on uncorroborated testimony of victim of sexual offense if victim informed any person, other than defendant, of alleged offense within one year after date on which offense is alleged to have occurred), 38.07(b)(1) (requirement that victim inform another person of alleged offense does not apply if at time of alleged offense

victim was seventeen years old or younger); *Bryant v. State*, 340 S.W.3d 1, 13-14 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *see Salazar v. State*, No. 04-13-00426-CR, 2014 Tex. App. LEXIS 6538, at \*4 (Tex. App.—San Antonio June 18, 2014, no pet.) (mem. op., not designated for publication) (noting that jury is sole judge of credibility of witnesses and weight to be given to absence of physical evidence of sexual assault).

The jury heard that M.T. struggled with her grades but that they had improved by the time of trial when she was no longer in a household with Perry. The jury also heard Mother acknowledge several details that M.T. also testified about, including that at some point M.T. used a sleeping bag in her bed, that M.T. rearranged the furniture in her room, that Perry had white "lounge around" shorts that he sometimes wore when he drove M.T. to school, that Perry took M.T. to school more often during her freshman year, and that Perry wore boxer briefs around the house. Mother explained that Perry himself told her about an incident in which M.T. saw him when he walked downstairs naked.

After considering the minimal prejudicial effect of the prosecutor's remark, the presumed efficacy of the district court's instructions to the jury, and the strength of the evidence supporting Perry's conviction, we conclude that the district court could have determined, within the zone of reasonable disagreement, that denial of Perry's motion for mistrial was appropriate. *See Archie*, 340 S.W.3d at 738-39.

## CONCLUSION

We affirm the district court's judgments of conviction.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Triana and Smith

Affirmed

Filed:   August 13, 2019

Do Not Publish