**Affirmed and Memorandum Opinion filed May 31, 2012.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-11-00319-CR
_____

**JEREMY PIERCE, Appellant,**

**V.**

**THE STATE OF TEXAS, Appellee.**

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1212935**

## MEMORANDUM OPINION

Appellant Jeremy Pierce appeals from the trial court's judgment on a jury verdict finding him guilty of murder and sentencing him to fifty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. In two issues, Pierce contends that (1) egregious harm resulted from the trial court's failure to sua sponte instruct the jury concerning the voluntariness of his statement to police, and (2) the trial court abused its discretion in failing to grant a mistrial based on improper statements during closing argument. We affirm.

# I

Jeremy Pierce has a long history of mental illness. He has been diagnosed with either schizoaffective disorder or bipolar disorder, compounded by the use of illegal drugs. His problems began in his teenage years, and when he was eighteen he was admitted to a mental health facility. He would be admitted several more times between 1995 and 1998. Pierce's mother also suffered from mental illness and was institutionalized several times, and other members of Pierce's family reportedly suffered from mental or emotional problems. Although Pierce did not finish high school, he did obtain a GED.

In 2006, Pierce went to live with his aunt, Janet Burroughs. During this time, Pierce obtained an associate degree at Galveston College and, in 2008, was accepted to the University of Houston's School of Architecture. In 2007, however, Burroughs noticed Pierce becoming agitated and having difficulty dealing with people, so she sought psychiatric help for him. Dr. William Bondurant, a psychiatrist, diagnosed Pierce as having schizoaffective disorder and prescribed medication for him. Dr. Bondurant continued to treat Pierce for about a year and a half.

In the early morning hours of February 7, 2009, Pierce left his dorm room at the University of Houston armed with pistol he had stolen from Burroughs the week before. Joe Tall, who had been homeless for many years, was sleeping on a bus-stop bench near the campus. As Pierce passed by the bus stop, he shot Tall in the head. Pierce then went back to his dorm, threw the bullet shell in the trash, and put the gun away.

No one saw Pierce shoot Tall, but he later admitted that he committed the murder to his friends, Christopher Hawkins and Alvin White. Hawkins and White were also attending the university and lived on campus. When Hawkins asked Pierce why he shot Tall, Pierce replied, "F——g bums don't belong. They're a blight on society and they don't belong and if nobody is going to get rid of them, I will." Before the crime, Pierce had claimed to be in the Mafia and he often blamed the homeless for the crime on campus. He also claimed to have convinced doctors that he was crazy and that he could get away with

killing someone because he had "crazy papers." Because neither Hawkins nor White really believed Pierce's confession, they did not immediately contact the police.

In April 2009, Pierce became angry with Hawkins over a perceived debt. Pierce showed White a gun in his waistband and threatened to kill Hawkins if Hawkins did not pay him. Hawkins called the campus police. Hawkins and White then told the police about Pierce's confession to them that he had killed a homeless man near campus.

Pierce was detained and taken to the police station. In an initial interview, he denied any involvement in the murder. In the meantime, police located the murder weapon in his dorm room. After Pierce was confronted with this information, he provided a recorded statement that he shot Tall in self-defense. He claimed that he was walking by the bus stop when Tall kicked in his direction. Fearing for his safety, Pierce shot him in the head.

Pierce was arrested for murder. The trial court ordered him to be evaluated for competency and sanity. Dr. Ramon Laval, a psychologist, determined that Pierce was competent to stand trial and legally sane at the time of the offense.

At trial, Pierce entered a plea of "not guilty by reason of insanity." Dr. Seth Silverman, a psychiatrist called by the defense, testified that Pierce suffered from severe schizoaffective disorder and secondary substance abuse disorder. He concluded that at the time of the murder, Pierce was legally insane.[1] Dr. Silverman reached this conclusion because, among other things, Pierce's thinking was disorganized, he thought he was in the Mafia, and he believed it was his job to rid the university campus of people who did not belong, especially homeless people.

Dr. Gabrielle Hobday, a psychiatrist who evaluated Pierce on behalf of the State, agreed that Pierce suffers from schizoaffective disorder or bipolar disorder. She also opined that he could be classified as having a polysubstance dependence and an antisocial

---

[1] Dr. Silverman testified that he understood the legal definition of insanity to be "[a]t the time that someone committed a crime they didn't know right from wrong because of a severe mental disease or defect."

3

or paranoid personality disorder. However, she concluded that Pierce was not legally insane at the time of the offense. She testified that Pierce's behavior was likely related to his substance abuse and his personal beliefs about homeless people and others who "don't belong" on campus. She noted Pierce's statements to her indicating that he knew what he did was wrong at the time. She also noted his actions immediately after the shooting, including running from the scene, trying to hide evidence, and being "buzzed in" to his dorm by a residence assistant rather than using his own card so there would not be a record of his location at the time.

After considering the testimony of the parties' witnesses, including Dr. Laval, Dr. Bondurant and the parties' experts, Drs. Silverman and Hobday, the other evidence admitted, and the audio recording of Pierce's statement to the police, the jury rejected Pierce's insanity defense and convicted him of murder. This appeal followed.

II

In his first issue, Pierce contends egregious harm resulted when the trial court failed to provide jury instructions sua sponte pursuant to article 38.22, section 6, of the Code of Criminal Procedure. The instruction was warranted, Pierce claims, because a factual dispute existed regarding the voluntariness of his statement to police. The audio recording of Pierce's statement, just over four minutes long, was played for the jury. In the recording, an officer is heard reading Pierce his rights, and Pierce clearly states that he understands his rights and wants to waive them and make a statement. Pierce argues, however, that his mental condition rendered him unable to knowingly and intelligently waive his rights, and therefore the trial court should have made a finding as to the voluntariness of his statement and instructed the jury as required in article 38.22.

4

A

We review allegations of jury-charge error under a two-pronged test set forth in *Almanza v. State.*[2] *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). We first decide whether the trial court erred. *Id.*; *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). If there is error in the charge and the appellant objected to the error at trial, reversal is required if the error "is calculated to injure the rights of the defendant," which has been defined to mean that there is "some harm." *Barrios*, 283 S.W.3d at 350 (quoting *Almanza*, 686 S.W.2d at 171). If the appellant did not object, the error must be "fundamental" and reversal is required only if the error was so egregious and created such harm that the defendant "has not had a fair and impartial trial." *Id.*

Texas Code of Criminal Procedure article 38.22 contains "legislatively mandated procedures governing the admission and consideration of a defendant's statements." *Oursbourn v. State*, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008). Section 6 of article 38.22 requires a trial court to include an instruction in the jury charge when a question is "raised and litigated" as to the general voluntariness of an accused's statement. *Id.* Under the statute, the trial court must (1) make an independent determination that the statement was made under voluntary conditions; and then (2) instruct the jurors that they shall not consider the statement for any purpose unless they believe, beyond a reasonable doubt, that the statement was made voluntarily. *Id.* at 180–81.

A question is raised when a party notifies the court that there is an issue concerning the voluntariness of the statement, or the court raises the issue on its own. *Id.* at 175. After a question is raised, the issue must also be litigated before the court. *Id.* at 175–76. As the Court of Criminal Appeals has explained: "The broad range of voluntariness issues covered by [s]ection 6 could easily be implicated by evidence that would also be relevant for other purposes, and [s]ection 6 does not even require the existence of a factual dispute

---

[2] 686 S.W.2d 157, 171 (Tex. Crim. App. 1985), *overruled on other grounds by Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988).

5

that might at least obliquely alert the trial judge to the need for an instruction." *Id.* at 176. Therefore, the requirement that the voluntariness of an accused's statement be litigated in some manner before a jury instruction becomes necessary "ensures that the trial judge is on notice that the instruction is required." *Id.*

## B

The State does not dispute that Pierce suffers from a long-standing mental illness. Because the only contested issue at trial was whether Pierce was insane at the time of the offense, considerable evidence was presented regarding Pierce's mental health and psychiatric history. Pierce relies on this evidence to establish that a question was raised as to the voluntariness of his statement. But Pierce raised no question regarding the voluntariness of his statement at any time before or during the trial. Before trial, Pierce was declared both sane at the time of the offense and competent to proceed to trial. Pierce did not file a motion to suppress or object on the grounds that his statement was not voluntary when the State sought to admit the statement into evidence. And nothing in the record indicates that Pierce ever requested a hearing on the voluntariness of his statements or that the trial court held such a hearing. *See Oursbourn*, 259 S.W.3d at 175.

Additionally, the issue of Pierce's mental state at the time he provided his statement—more than two months after the offense—and his competence to waive his constitutional rights were not litigated at any point during the trial. A claim under section 6 that an accused's statement was involuntarily made may include situations involving police overreaching, youth, intoxication, illness or medication, mental incapacitation, or other disabilities. *See id.* at 172–73. Here, Pierce emphasizes the evidence that he suffers from mental illness, but he points to no evidence of a causal connection between his mental illness and his alleged inability to knowingly and voluntarily waive his constitutional rights. S*ee Jones v. State,* 944 S.W.2d 642, 651 (Tex. Crim. App. 1996) (holding trial court did not err in admitting appellant's confession because appellant presented no evidence as to whether his alleged intoxication rendered him incapable of making a voluntary

6

decision); *see also Leyva v. State*, 552 S.W.2d 158, 160 (Tex. Crim. App. 1977) (stating that mental illness does not necessarily equal mental incompetency). Further, in his recorded statement, Pierce claimed to understand his legal rights and he waived those rights before speaking with the police. On the recording, Pierce sounds lucid, polite, and articulate.

Thus, the issue of the general voluntariness of Pierce's statement under article 38.22, section 6 was not raised or litigated and therefore the trial court did not err in failing to sua sponte provide the jury with the statutory instruction. *See Oursbourn*, 259 S.W. 3d at 180. We overrule Pierce's first issue.

## III

In his second issue, Pierce contends the trial court abused its discretion in failing to grant a mistrial based on the prosecutor's allegedly improper statements during closing argument. During the State's argument, the following exchange occurred:

> [State]:  [Pierce] took that gun back to Galveston later when he decided he had gotten away with it. He went to go get the gun again so he could use it again and kill somebody else.
>
> [Defense Counsel]:  Your Honor, I'm going to object to that. She is implying extraneous [bad acts] which ha[ve] absolutely no evidence in this record. Second, she is testifying to matters that have not been - - that are clearly outside the record.
>
> Court:  Sustained.
>
> [Defense Counsel]:  Ask the jury be instructed to disregard the last comment on the part of the Prosecution, Your Honor.
>
> Court:  Ladies and gentlemen, you will disregard the prosecutor's last comment regarding a firearm.
>
> [Defense Counsel]:  And, Judge, I would ask for a mistrial.
>
> Court:  That will be denied.

Pierce argues that the suggestion that he would have killed again had he not been arrested improperly placed an unreasonable fear in the minds of the jury that may have influenced

them to conclude that he was sane at the time of the offense when they otherwise might not have done so. Further, Pierce contends that the trial court's curative argument "could not possibly have removed this fear from the jurors' minds and the granting of a mistrial was the only way to cure this error."

## A

A mistrial is the trial court's remedy for improper conduct that is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). The standard of review for the denial of a motion for mistrial is abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). The reviewing court should uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* (citing *Wead v. State,* 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)).

Whether a mistrial should have been granted involves most, if not all, of the considerations that attend a harm analysis. *Id.* at 700. Therefore, a reviewing court balances the three factors first enunciated in *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998): (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the trial judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Id.*

The four general areas for proper jury argument are (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Wesbrook v. State,* 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). The prosecutor may draw all inferences from the facts in evidence that are reasonable, fair, and legitimate. *Allridge v. State,* 762 S.W.2d 146, 156 (Tex. Crim. App. 1988). Error exists when facts not supported by the record are interjected in the argument, but such error is not reversible unless, in light of the record as a whole, the argument is extreme or manifestly improper. *Id.* at 155; *Wright v. State,* 178 S.W.3d 905, 929 (Tex.

8

App. Houston [14th Dist] 2005, pet ref'd). Counsel's remarks during final argument must be considered in the context in which they appear. *See Denison v. State,* 651 S.W.2d 754, 761 (Tex. Crim. App. 1983).

B

The State's argument was not improper because it was a reasonable deduction from the evidence. Hawkins and White testified that Pierce would go on rants about homeless people on campus; he expressed the belief that the homeless and minorities were committing crimes on campus and they should be killed. Pierce got the gun he used to commit the murder from his aunt's home in Galveston. Although in his statement Pierce said that after he killed Tall he took the gun back to his dorm room where it remained, White and Dr. Hobday testified that Pierce told them he returned the gun to his aunt's home after the murder. Later, Pierce accused Hawkins of owing him money. Brandishing a handgun, Pierce threatened to kill Hawkins if he did not get his money. Fearing for his safety, Hawkins called the police. The State's argument that Pierce retrieved the murder weapon from Galveston to kill someone else was a logical deduction from the evidence. *Cf. Cook v. State*, 858 S.W.2d 467, 473–74, 477 (Tex. Crim. App. 1993) (holding argument during punishment phase that defendant would kill again is reasonable deduction from evidence that defendant had violent past history, previous aggravated assault conviction, and showed no remorse after killing).

Further, a prompt instruction to disregard is presumed to cure any error associated with improper jury argument. *Phillips v. State*, 130 S.W.3d 343, 356 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). The trial court promptly instructed the jury to disregard the prosecutor's statement, and the State did not return to it. Even if the statement exceeded the bounds of permissible argument, it was not so offensive or flagrant that the instruction to disregard was ineffective. *See Wesbrook*, 29 S.W.3d at 116.

Finally, although Pierce argues that he was harmed by the prosecutor's statement because it could have convinced the jury that he was sane at the time he committed the

9

murder, there was substantial evidence in the record to support the jury's verdict. The State does not dispute that Pierce suffers from mental illness, but it presented evidence that his hallucinations and erratic behavior could have been caused by his voluntary drug abuse. Pierce claimed that his longest period of sobriety was for six months in 2003. And two doctors concluded that Pierce was legally sane at the time of the offense.

Additionally, witnesses testified that Pierce harbors anger and prejudice toward the homeless. Pierce often spoke of how the homeless were to blame for crime on campus and how he would "get rid" of them. After killing Tall, Pierce took steps to conceal his involvement in the crime. Further, there was evidence that Pierce emphasized his mental illness to benefit his insanity defense. Even disregarding the State's argument, the record contains ample evidence to support the jury's finding that Pierce was legally sane at the time of the murder.

The trial court did not abuse its discretion in denying Pierce's motion for mistrial. We therefore overrule Pierce's second issue.

* * *

We overrule Pierce's issues and affirm the trial court's judgment.


/s/    Jeffrey V. Brown
Justice

Panel consists of Justices Frost, Brown, and Christopher.

Do Not Publish — TEX. R. APP. P. 47.2(b).

10