**Opinion issued August 30, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00132-CR

———————————

**RICHARD CHARLES OWINGS, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 262nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1454997**

---

## O P I N I O N

A jury convicted appellant, Richard Charles Owings, Jr., of the first-degree

felony offense of aggravated sexual assault of a child and assessed his punishment

at thirty years' confinement.[1]  In two issues, appellant contends that the trial court erred by (1) allowing the State to cross-examine him about the underlying facts of his prior conviction for aggravated robbery, and (2) denying his request that the court order the State to elect which of the instances of sexual assault presented during the trial testimony it would rely upon for a conviction.

We reverse and remand.

## Background

Appellant was previously married to F.M., the grandmother of the complainant, K.M., who was born in 2003 and was eleven years old at the time of trial.  Appellant and K.M. are not biologically related.  K.M. and her mother, M.M., occasionally lived with F.M. and appellant, and they all lived together in late 2009 and early 2010.  Because appellant was unemployed during this period of time and both F.M. and M.M. worked, K.M. spent a lot of time after school in the care of appellant or K.M.'s uncle, who was in high school.  K.M. had a "close" relationship with appellant.

F.M. testified that she felt suspicious of appellant's interactions with K.M. Occasionally, appellant and K.M. would be alone in appellant and F.M.'s bedroom with the door locked, and, when questioned about this, appellant would respond that he and K.M. wanted to spend time together without other family members

---

[1]    *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii), 22.021(a)(2)(B) (Vernon Supp. 2015).

2

being involved. F.M. noticed that this happened most often when she and appellant hosted family dinners on Sundays. On one occasion, when appellant unlocked and opened the door, F.M. noticed K.M. standing in the doorway to the bathroom pulling up her pants, and appellant explained that she had just used the bathroom. F.M. testified that the incident seemed "[a] little weird" to her and that, although K.M. appeared physically fine, she was acting "like maybe she had done something she shouldn't have." F.M. did not suspect sexual abuse at that point in time.

M.M. and K.M. moved out of F.M. and appellant's house in early 2010, but K.M. still frequently spent time with F.M. and appellant, including Sunday family dinners and holidays. On Thanksgiving day, 2010, F.M. called everyone to the table, but appellant and K.M. did not show up. When F.M. went to the bedroom she shared with appellant, the door was locked, and she told appellant and K.M. that it was time to eat. K.M. sat next to F.M. at the table and refused to eat, saying that she was not hungry. When F.M. asked her what was wrong, K.M. "looked terrified" and "like she was saying help me." At this point, F.M. became suspicious that something improper had occurred between appellant and K.M., and she asked K.M. about a week later if appellant had ever touched her inappropriately. K.M. denied that anything improper had occurred. F.M.

"periodically" asked K.M. about whether appellant had done anything inappropriate to her, and K.M. always denied it.

In February 2011, F.M. filed for divorce from appellant. Two years later, in January 2013, K.M. was spending the night at F.M.'s house, and F.M. asked her if she ever missed appellant. K.M. started crying, and when F.M. asked if there was anything that K.M. wanted to tell her, K.M. disclosed that appellant had sexually abused her. F.M. then told M.M. about this conversation, and they called the sheriff's department.

The indictment in this case alleged that, on or about January 1, 2010, appellant "did then and there unlawfully, intentionally and knowingly cause the sexual organ of [K.M.], a person younger than fourteen years of age and not the spouse of [appellant], to contact the sexual organ of [appellant]."[2]

K.M. testified that when she was about five years old and F.M. and M.M. were both at work, appellant took her into his bedroom, took off her clothes and his clothes, and laid her down on the bed. Although she started crying and told

---

[2] The State charged appellant with the offense of aggravated sexual assault of a child. The State did not charge appellant with the offense of continuous sexual abuse of a young child. *See* TEX. PENAL CODE ANN. § 21.02(b) (Vernon Supp. 2015). Section 21.02(b) provides that a person commits an offense if, during a time period that is thirty days or more in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts are committed against one or more victims, and at the time of the commission of each of the acts of sexual abuse, the actor is seventeen years old or older, and the victim is a child younger than fourteen years old. *Id.*

4

appellant to stop, appellant climbed on top of her and vaginally penetrated her. Appellant showed her a knife that he carried around with him all the time, "put it to [her]," and told her that if she told anyone about what had happened, he would hurt her, someone else, or one of her pets. K.M. also testified concerning a separate incident that occurred in appellant's bedroom in which, in addition to vaginally penetrating her, he made her perform oral sex on him. On another occasion, K.M. was watching a movie in her uncle's bedroom in appellant and F.M.'s house when appellant came into the room, engaged in vaginal intercourse with K.M. and made her perform oral sex on him.

K.M. further testified to a fourth incident that occurred after appellant and F.M. had separated in early 2011. Appellant picked her up from where she was living with M.M. to take her to an arcade. On the way there, appellant stopped by his father's house, where he was living at the time, took her to his bedroom, and forced her to engage in both oral and vaginal intercourse. Appellant then took K.M. home and told her to tell M.M. that they had visited the arcade. K.M. did not see appellant again after this incident. K.M. did not state specific dates for when these actions allegedly occurred.

Lisa Holcomb, a forensic interviewer with the Children's Assessment Center, and Sarah Valdes, a nurse practitioner with the U.T. Child Abuse Center, conducted K.M.'s forensic interview in February 2013 and her physical and genital

5

examination in June 2013, respectively. K.M. disclosed to both Holcomb and Valdes that she had been sexually abused, and she was "very detailed" regarding what had happened. K.M. disclosed that appellant would take her into his bedroom and threaten her with a knife and that his "private area" would touch her "private area." K.M. told Holcomb that the abuse happened "a lot" when she was four through eight years old. K.M. specifically described to Holcomb an incident that occurred in her uncle's bedroom in appellant and F.M.'s house in which appellant forced K.M., who was five or six years old at the time, to perform oral sex on him. K.M. also specifically told Holcomb about an incident that occurred at appellant's father's house.

Upon appellant's request, the trial court verbally instructed the jury pursuant to Code of Criminal Procedure article 38.37 that

> [E]vidence of other crimes, wrongs, or acts committed by the Defendant against the child who is the victim of the alleged offense in this indictment shall be admitted for its bearing on relevant matters including the state of mind of the Defendant and the child and the previous and subsequent relationship between the Defendant and the child.

The trial court further instructed the jury that it could not consider this evidence for any other purpose. The trial court included a substantially similar instruction in the charge.

After the State rested, defense counsel argued that there had been evidence of "multiple offenses" and multiple dates for the instances of different acts of

6

sexual assault, and he requested that the trial court order the State "to elect which one of the multiple occasions it's going to rely on." The trial court stated:

> And just so that I'm clear, I have a copy of the indictment in front of me, which we all, obviously, had an opportunity to review it. There is one allegation alleged in the indictment. There is one date that is alleged in the indictment. So, the State is relying on the elements, I would imagine—well, they are required by law to rely on what they have pled, which is one act on or about a certain date. There aren't multiple paragraphs in this indictment alleging different acts on different dates.

> Now, I do intend to give the jury a limiting instruction, and I gave a limiting instruction already, but I'll give it to the jury, obviously, in the Court's Charge regarding other acts between—alleged acts between the Defendant and the complaining witness. And I'll limit the jury's consideration.

The trial court did not require the State to elect which instance of sexual assault it would rely upon for a conviction.

Appellant testified on his own behalf. On direct-examination, appellant acknowledged that he had a prior conviction for aggravated robbery in 1986 and a prior conviction for felony driving while intoxicated in 2012. Appellant testified that he had had a close relationship with K.M., but he denied ever sexually abusing her or behaving in an inappropriate way with her. He suggested that F.M. had encouraged K.M. to make the abuse allegations against him and that K.M. was possibly motivated by "positive attention" from F.M. and M.M.

On cross-examination, the State questioned appellant about his prior aggravated robbery conviction over the objection of the defense. Specifically, the

State asked appellant, "Fair to say then that you have threatened people with weapons before to get what you want?" Appellant acknowledged that he exhibited a gun during the aggravated robbery offense.

The jury charge stated, "The defendant, Richard Charles Owings, Jr., stands charged by indictment with the offense of aggravated sexual assault of a child, alleged to have been committed on or about the 1st day of January, 2010, in Harris County, Texas." The charge also included an instruction informing the jury that "the State is not bound by the specific date which the offense, if any, is alleged in the indictment to have been committed, but that a conviction may be had upon proof beyond a reasonable doubt that the offense, if any, was committed at any time within the period of limitations." The instruction stated, "There is no limitation period applicable to the offense of aggravated sexual assault of a child." The charge included a general instruction that, to convict, the jury had to unanimously find beyond a reasonable doubt that appellant committed the offense of aggravated sexual assault of a child. The charge did not include a specific instruction that, to convict, the jury had to unanimously agree that appellant committed a particular act of sexual assault. Appellant did not object to this omission.

The jury found appellant guilty of aggravated sexual assault of a child and assessed his punishment at thirty years' confinement. This appeal followed.

8

**Failure to Elect Particular Act of Sexual Assault Relied Upon for Conviction**

In his second issue, appellant contends that the trial court erroneously refused to require the State to elect which of the specific instances of sexual assault of K.M. presented in the trial testimony it would rely upon as the primary act for a conviction. The State replies that appellant failed to preserve this complaint for appellate review.

*A.    Governing Law*

**1.  Election of Act Relied Upon for Conviction**

"The general rule is that where one act of intercourse is alleged in the indictment and more than one act of intercourse is shown by the evidence in a sexual assault trial, the State must elect the act upon which it would rely for conviction."[3]  *O'Neal v. State*, 746 S.W.2d 769, 771 (Tex. Crim. App. 1988); *see Phillips v. State*, 193 S.W.3d 904, 910 (Tex. Crim. App. 2006) (reaffirming *O'Neal*).  Once the State rests its case in chief, upon a timely request by the defendant, the trial court must order the State to make its election.  *O'Neal*, 746 S.W.2d at 772; *see Phillips,* 193 S.W.3d at 909 ("In reexamining *O'Neal*, we find no reason to deviate from our holding that a trial court errs by failing to have the State elect at the close of its evidence when properly requested by the defense.").

---

[3]    An exception to this general rule exists "where several acts of intercourse were committed by one continuous act of force and threats, and are part of the same criminal transaction."  *O'Neal v. State*, 746 S.W.2d 769, 771 (Tex. Crim. App. 1988).  The State does not contend that this exception applies in this case.

The Court of Criminal Appeals reasoned that in a "single count, multiple transaction case[]," in which the indictment charges a single offense but the evidence "reveal[s] numerous repetitions of sexual acts over a considerable period of time," the State must elect which "transaction," or act of intercourse, it will rely upon to prove the single offense alleged in the indictment because otherwise, "a defendant might find himself without notice as to which of a multitude of acts he might be called upon to defend." *O'Neal*, 746 S.W.2d at 772.

In *Phillips*, the Court of Criminal Appeals stated:

> In short, requiring the State to elect at the close of its evidence forces it to formally differentiate the specific evidence upon which it will rely as proof of the charged offense from evidence of other offenses or misconduct it offers only in an evidentiary capacity. This allows the trial judge to distinguish the evidence which the State is relying on to prove the particular act charged in the indictment from the evidence that the State has introduced for other relevant purposes. Thus, the trial court can instruct the jury on the proper use and weight to accord each type of evidence. Moreover, the election requirement protects fundamental rights such as notice and [jury] unanimity, insuring both that the defendant is aware of precisely which act he must defend himself against, and that the jurors know precisely which act they must *all* agree he is guilty of in order to convict him.

193 S.W.3d at 910 (emphasis in original); *Phillips v. State*, 130 S.W.3d 343, 349 (Tex. App.—Houston [14th Dist.] 2004) (noting that one reason for election requirement is to minimize risk that jury chooses to convict defendant "not because one or more crimes were proved beyond a reasonable doubt, but because all of

10

them together convinced the jury the defendant was guilty"), *aff'd*, 193 S.W.3d 904 (Tex. Crim. App. 2006).

The Court of Criminal Appeals in *Phillips* also addressed whether other procedural actions taken during trial could render the election requirement unnecessary. *See* 193 S.W.3d at 911–12. The court held that Code of Criminal Procedure article 38.37, which permits the admission of evidence of "other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense [of sexual misconduct]," does not "restrict a defendant's right to have the State elect the incident for which it will seek a conviction by forcing the defendant to request a limiting instruction when the evidence is admitted." *Id.* at 911; *see* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1(b) (Vernon Supp. 2015) (permitting admission of extraneous acts between defendant and child "for its bearing on relevant matters, including . . . the state of mind of the defendant and the child; and . . . the previous and subsequent relationship between the defendant and the child"). Similarly, "[a] jury charge alone . . . does not afford the defendant with the requisite notice that is provided by a valid and timely election by the State" because the charge is not given until the end of trial and would not require the State to make its election at a time "when the defense needs to know the evidence it must refute in order to challenge the specific act in the indictment." *Phillips*, 193 S.W.3d at 912.

11

When the trial court requires the State to make an election, a defendant is also entitled to an instruction in the jury charge informing the jury to consider only the elected act in deciding guilt and limiting the consideration of the unelected acts to the purposes for which they were admitted, such as for consideration under article 38.37. *See Rivera v. State*, 233 S.W.3d 403, 406 (Tex. App.—Waco 2007, pet. ref'd). "While each of the incidents presented [to the jury during trial testimony] may constitute the commission of a sexual abuse offense, the jury must agree on one distinct incident in order to render a unanimous verdict." *Phillips*, 193 S.W.3d at 913. The jury's consideration of multiple instances of sexual abuse without the State's election of one instance on which to rely for a conviction "jeopardizes the defendant's right to a unanimous jury verdict as guaranteed by the Texas Constitution, even though the extraneous incidents may be admissible for other purposes under Article 38.37 of the Code of Criminal Procedure." *Id.*

The trial court's failure to require the State to elect the specific act on which it intends to rely for a conviction upon a timely request by the defendant constitutes constitutional error. *Id.* at 914. In such cases, we must reverse a judgment of conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction. *See* TEX. R. APP. P. 44.2(a); *Phillips*, 193 S.W.3d at 914. In determining whether the trial court's failure to require the

12

State to elect harmed the defendant, we consider the four purposes behind the election rule:

(1) to protect the accused from the introduction of extraneous offenses;

(2) to minimize the risk that the jury might choose to convict, not because one or more crimes were proven beyond a reasonable doubt, but because all of them together convinced the jury the defendant was guilty;

(3) to ensure unanimous verdicts, that is, all of the jurors agreeing that one specific incident, which constituted the offense charged in the indictment, occurred; and

(4) to give the defendant notice of the particular offense the State intends to rely upon for prosecution and afford the defendant an opportunity to defend.

*Dixon v. State*, 201 S.W.3d 731, 733, 734 (Tex. Crim. App. 2006). "If the State fails to elect, but the evidence presented clearly indicates which specific incident the State is relying on, the error is not harmful." *Phillips*, 130 S.W.3d at 352. If, however, multiple instances are described in detail and it is unclear which act the State would rely upon for conviction, then courts cannot say beyond a reasonable doubt that the error in failing to require an election did not contribute to the conviction. *Id.* at 353–54.

## 2. Preservation of Error

On appeal, the State contends that appellant failed to preserve for appellate review his complaint that the trial court failed to require the State to elect the alleged act upon which it relied for conviction. It argues that although appellant

13

timely requested that the State elect which alleged act it would be relying upon, the record does not demonstrate that the trial court made an adverse ruling on the request.

To preserve error for appellate review, the complaining party must make a timely request, objection, or motion and must obtain a ruling by the trial court. *See* TEX. R. APP. P. 33.1(a); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). The complaining party must receive an adverse ruling from the trial court, and that ruling must be conclusive, "that is, it must be clear from the record the trial judge in fact overruled the defendant's objection or otherwise error is waived." *Ramirez v. State*, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991). An implied ruling by the trial court may be sufficient to preserve error "when the objection was brought to the trial court's attention and the trial court's subsequent action clearly addressed the complaint." *See State v. Kelley*, 20 S.W.3d 147, 153 n.3 (Tex. App.—Texarkana 2000, no pet.); *see also* TEX. R. APP. P. 33.1(a)(2)(A) (providing that to preserve error, record must show that trial court "ruled on the request, objection, or motion, either expressly or implicitly"); *Gutierrez v. State*, 36 S.W.3d 509, 511 (Tex. Crim. App. 2001) (holding that court of appeals erred in determining that appellant failed to preserve complaint concerning motion to suppress when appellate court failed to consider whether trial court impliedly ruled on motion).

## B.    *Application of the Law to the Facts of the Case*

Here, after the State rested, defense counsel had the following exchange with the trial court:

[Defense counsel]:    We have a Motion for Directed Verdict and a Motion for an election by the State at this point as to which one of the alleged dates or times that they will be relying on.

The Court:    Well, they have alleged on or about January 1st of 2010 in their indictment.

[Defense counsel]:    We have had multiple offenses given to us in testimony, and we have multiple dates for occasions for them, and we believe that under *Milby v. State*, the State having rested, we have the right to ask the State to elect which one of the multiple occasions it's going to rely on.

The Court:    And just so I'm clear, I have a copy of the indictment in front of me, which we all, obviously, had an opportunity to review it. There is one allegation alleged in the indictment. There is one date that is alleged in the indictment. So, the State is relying on the elements, I would imagine—well, they are required by law to rely on what they have pled, which is one act on or about a certain date. There aren't multiple paragraphs in this indictment alleging different acts on different dates.

Now, I do intend to give the jury a limiting instruction, and I gave a limiting instruction already, but I'll give it to the jury, obviously, in the Court's Charge regarding other acts between—alleged acts between

15

the Defendant and the complaining witness.
And I'll limit the jury's consideration.

The charge given by the trial court reiterated the language from the indictment concerning the date of the alleged offense as January 1, 2010, but the charge also included an instruction that "the State is not bound by the specific date which the offense, if any, is alleged in the indictment to have been committed, but that a conviction may be had upon proof beyond a reasonable doubt that the offense, if any, was committed at any time within the period of limitations."[4] The instruction then informed the jury that "[t]here is no limitation period applicable to the offense of aggravated sexual assault of a child." *See Farr v. State*, 140 S.W.3d 895, 899–900 (Tex. App.—Houston [14th Dist.] 2004) ("[F]or the purposes of determining appellant's guilt or innocence of the indicted offenses, the jury charges did not limit the jury's consideration to appellant's conduct on any specific date."), *aff'd sub nom. Phillips*, 193 S.W.3d 904 (Tex. Crim. App. 2006). The

---

[4] The State need not allege a specific date in the indictment. *Sledge v. State*, 953 S.W.2d 253, 255 (Tex. Crim. App. 1997). "It is well settled that the 'on or about' language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period." *Id.* at 256; *Thomas v. State*, 753 S.W.2d 688, 693 (Tex. Crim. App. 1988) ("Where an indictment alleges that some relevant event transpired 'on or about' a particular date, the accused is put on notice to prepare for proof that the event happened at any time within the statutory period of limitations."); *see also Yzaguirre v. State*, 957 S.W.2d 38, 39 (Tex. Crim. App. 1997) ("In the absence of evidence that the offense occurred on April 23, 1995, [the specific date alleged in the indictment,] the State was entitled to rely upon an instance of prior conduct occurring during the preceding year that otherwise met the description of the offense in the indictment.").

16

charge did not include a specific instruction that the jury had to unanimously agree that appellant committed a particular act of sexual assault.

## 1. Preservation of Error

Here, appellant properly requested at the close of the State's evidence that the State be required to elect the primary act relied upon for conviction. *See Phillips*, 193 S.W.3d at 910. When appellant requested that the State make its election, the trial court responded that the indictment alleged January 1, 2010, as the date that appellant allegedly assaulted K.M. and that the State is "required by law to rely on what they have pled, which is one act on or about a certain date." The trial court then stated that it intended to give a limiting instruction in the charge concerning other alleged acts between appellant and K.M. Although the trial court did not expressly deny or overrule appellant's request that the State be required to make its election, the trial court's subsequent statements reflected that it did not believe that the State needed to make an election because the indictment alleged one act on a specific date. The court then stated that it would give an article 38.37 limiting instruction, but it did not require the State to make an election.

We hold that, in view of these statements and actions, the trial court overruled appellant's request that the State be required to make an election. Appellant, therefore, properly preserved his complaint for appellate review. *See*

TEX. R. APP. P. 33.1(a)(2)(A) (noting that trial court's ruling may be made "either expressly or implicitly"); *Kelley*, 20 S.W.3d at 153 n.3 (stating that implied ruling may preserve error "when the objection was brought to the trial court's attention and the trial court's subsequent action clearly addressed the complaint"); *see also Rey v. State*, 897 S.W.2d 333, 336 (Tex. Crim. App. 1995) ("While we require that a defendant's objections be specific enough to effectively communicate his complaint to the court, we are less stringent in our requirements of the trial court's ruling on an objection. A court's ruling on a complaint or objection can be impliedly rather than expressly made.").

We turn, therefore, to whether the trial court erred in failing to require the State to elect the primary act relied upon for conviction.

## 2. Trial Court's Failure to Require Election

Here, the indictment against appellant alleged:

> The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, Richard Charles Owings, Jr., hereafter styled the Defendant, heretofore on or about **January 1, 2010**, did then and there unlawfully, intentionally and knowingly cause the sexual organ of [K.M.], a person younger than fourteen years of age and not the spouse of the Defendant, to contact the sexual organ of the Defendant.

At trial, Holcomb testified that in her forensic interview, K.M. told her that the abuse happened "a lot" when she was between four and eight years old. K.M. testified to four separate, specific instances in which appellant's sexual organ

18

contacted her sexual organ: two different occasions that occurred in F.M. and appellant's bedroom (one of which was accompanied by appellant forcing K.M. to also perform oral sex on him), one occasion that occurred in her uncle's bedroom, and one occasion that occurred at appellant's father's house. K.M. provided detailed testimony regarding each of these instances, such as where the acts took place and what appellant made her do. K.M. did not give specific dates for when any of these instances occurred, although she testified that the first specific instance occurred when she was "[a]bout five years old," or in 2008 or 2009, and that the incident at appellant's father's house occurred after appellant and F.M. had separated in 2011. K.M. did not testify that any particular instance occurred on or around January 1, 2010, the particular date alleged in the indictment, and no other witness testified to any offense against K.M. occurring on that date. The State referred to each of the four specific instances testified to by K.M. during closing argument.

This is a case in which the indictment alleged one act of intercourse and the testimony at trial demonstrated that more than one act of intercourse occurred. Thus, upon appellant's timely request, the State was required to elect the act of intercourse upon which it would rely for a conviction. *See Phillips*, 193 S.W.3d at 912 ("[O]nce the State rests its case in chief, on the timely request of a defendant the trial court must order the State to make its election . . . ."); *O'Neal*, 746 S.W.2d

19

at 772 ("[O]nce the State rests its case in chief, in the face of a timely request by the defendant, the trial court *must* order the State to make its election. Failure to do so constitutes error.") (emphasis in original). The admission of evidence of other acts committed by appellant against K.M. did not restrict appellant's right to require the State to elect the incident for which it was seeking conviction. *See Phillips*, 193 S.W.3d at 911. Moreover, the jury charge did not serve "as a *de facto* election" because it was given too late in the trial to afford appellant the requisite notice to marshal his evidence to challenge the specific act relied upon by the State. *See id.* at 912.

We hold that the trial court erred by failing to require the State to make its election. We therefore turn to whether this error harmed appellant. *See Dixon*, 201 S.W.3d at 734; *Phillips*, 130 S.W.3d at 349.

### 3. Harm Analysis for Failure to Require State to Make Election Versus Harm Analysis for Failure to Inform Jury of Its Duty When Election Is Made

In *Phillips*, the Court of Criminal Appeals held that "the failure to require the State to elect upon timely request results in constitutional error." 193 S.W.3d at 914. In reviewing complaints about the court's failure to require an election, an appellate court is "required to reverse the convictions unless it [finds] beyond a reasonable doubt that the error did not contribute to the conviction or had but slight effect." *Id.* (citing TEX. R. APP. P. 44.2(a)). In answering this question in the

20

specific failure-to-elect context, courts must consider the four purposes underlying the election requirement, as articulated in *Phillips*. *See id.* at 910 (setting out purposes), 913–14 (conducting harm analysis); *see also Dixon*, 201 S.W.3d at 734–36 (analyzing failure to elect under constitutional harm standard set out in *Phillips*).

A related issue that arises in this context occurs when the trial court properly requires the State to make an election, but then fails to inform the jury in the jury charge of that election and of the jury's corresponding duty to consider only the elected act in deciding guilt and to convict only if all jurors agree unanimously, beyond a reasonable doubt, that the defendant committed the elected act. In other words, the trial court errs when it requires an election but fails to inform the jury of the consequences of that election. This issue is related to, but distinct from, the trial court's failure to require an election at all. *See Reza v. State*, 339 S.W.3d 706, 713 (Tex. App.—Fort Worth 2011, pet. ref'd) ("Both *Phillips* and *Dixon* address harm when the State fails to elect upon request; they do not deal with a harm analysis when the State makes an election, yet the trial court fails to include in its jury charge an instruction regarding the State's election."); *Isenhower v. State*, 261 S.W.3d 168, 175 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (rejecting constitutional harm analysis from *Dixon* and *Phillips* as "inapposite" when State

made election but error complained of was court's failure to include instruction on this election in jury charge).

In a case in which the trial court requires the State to make an election but fails to inform the jury of the election in the charge, courts conduct a harm analysis under the usual standard of harm for jury charge errors. They consider whether the error amounts to "some harm" or "egregious harm" depending on whether the defendant objected to the charge error at trial, and they consider the four *Phillips* purposes within this framework. *See Reza*, 339 S.W.3d at 714–15 ("Because Reza did not object to the trial court's failure to include in the jury charge an instruction regarding the State's election, we must decide whether the error was so egregious and created such harm that Reza was deprived of a fair and impartial trial—in short, that 'egregious harm' has occurred."); *Isenhower*, 261 S.W.3d at 175 ("Because we have found that the trial court erred by failing to include a more specific instruction in the charge limiting the jury's consideration to the [elected] first act of intercourse between A.B. and appellant, in light of appellant's failure to object to this charge error, we review it for egregious harm."); *but see Duffey v. State*, 326 S.W.3d 627, 631 (Tex. App.—Dallas 2009, no pet.) (holding, in case in which State made election but trial court did not specifically instruct jury on election in charge, that *Phillips* constitutional harm standard is appropriate, instead of usual charge error harm standard, because court's "failure to instruct the jury

concerning the State's election placed Duffey in the same position as if no election had been made," i.e., in position in which he could not know whether jury verdict was unanimous as to any specific act).

Here, however, as in *Phillips*, the trial court did not require the State to elect, upon appellant's timely request, which particular instance of sexual assault it would rely upon for conviction. As we have held, this was error. *See Phillips*, 193 S.W.3d at 914. As a result of this error, the trial court *also* did not include in the charge an instruction concerning which act the State had elected to rely upon and informing the jury that, to convict, it had to unanimously find beyond a reasonable doubt that appellant committed that particular elected act. Although appellant did not object to the omission of such an instruction in the charge, in this case, the erroneous charge derives from the trial court's earlier error in failing to require the State to make an election at all. It is that first error that appellant complains about on appeal.

Because this is a case in which the trial court wholly failed to require an election, as opposed to a case in which the court required the State to elect but then erroneously failed to include a corresponding instruction in the charge, we analyze harm using the constitutional harm standard set out in *Phillips* and *Dixon*. *See Dixon*, 201 S.W.3d at 734; *Phillips*, 193 S.W.3d at 914; *cf. Reza*, 339 S.W.3d at 713 (distinguishing *Phillips* and *Dixon* and using usual harm analysis for charge

23

error when trial court required election but failed to instruct jury in charge); *Isenhower*, 261 S.W.3d at 175 (holding same). We, therefore, must consider whether, without the election, the four purposes of requiring the election were nevertheless met.

### 4. Application of Constitutional Harm Analysis for Failure to Require Election

#### a. *Admission of extraneous offense evidence to show relationship between defendant and child victim*

With regard to the first purpose of the election requirement, which we consider in a harm analysis pursuant to *Phillips* and *Dixon*, appellant "was not entitled to be protected from the admission of evidence of extraneous sexual offenses committed by him against the child." *See Dixon*, 201 S.W.3d at 734. Article 38.37 "permits the admission of evidence of these offenses to show the previous and subsequent relationship between appellant and the child victim." *See id.* (citing TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1(1), 2(2)). Here, the trial court gave the jury an oral article 38.37 instruction, and the court included a substantially similar instruction in the charge.

Thus, this purpose of the election requirement was satisfied.

#### b. *Risk of jury's finding defendant guilty of offense not proved beyond a reasonable doubt*

The second purpose in requiring the State to elect the act of sexual assault on which it relies is to allow the courts to determine whether a risk exists that the jury

found appellant guilty of an offense that was not proved to its satisfaction beyond a reasonable doubt. *See id.* at 735. Here, as in *Dixon,* the "'multiple offenses' were all recounted by the same source—the child," and this case does not involve "evidence of different activities from different sources that a jury might perceive to 'add up' to the defendant being guilty even though no individual offense was proven beyond a reasonable doubt." *Id.* *Dixon*, however, involved a situation in which the child complainant "did not testify about a number of varied incidents with differing details that might have incrementally added to the idea that the defendant must have done something to provoke the plethora of stories about his activities"; rather, the child "articulated one sequence of events and merely answered that this sequence happened one hundred times, with all but one of those instances occurring at night." *Id.*; *Hulsey v. State*, 211 S.W.3d 853, 856 (Tex. App.—Waco 2006, no pet.) (finding no harm in failing to require State to elect when child complainant "did not testify to specific instances of sexual assaults or indecency by contact" but instead testified that conduct occurred "every morning that [the defendant] could when [the complainant's] mother was at work" and that conduct occurred "so many times that [the complainant could not] remember how many").

In this case, in contrast, K.M. testified concerning four different instances of sexual assault: the first occasion, which occurred in F.M. and appellant's bedroom;

the second occasion, which occurred in the same location but that also involved appellant forcing K.M. to perform oral sex on him; the third occasion, which occurred in K.M.'s uncle's bedroom while she was watching a movie; and the fourth occasion, which occurred after F.M. and appellant divorced and occurred at appellant's father's house after appellant picked K.M. up from her mother's house, ostensibly to take her to an arcade. All four instances involved the charged conduct of appellant's sexual organ contacting K.M.'s sexual organ, and the last three instances also involved appellant forcing K.M. to perform oral sex on him.

Thus, the purpose of requiring an election to minimize the risk that the jury convicted appellant not because the State proved one or more instances beyond a reasonable doubt but because all of the instances together convinced the jury of appellant's guilt was not satisfied.

### c. *Assurance of unanimous verdict*

The third purpose behind the election rule is to ensure a unanimous verdict. In this respect, this case is factually analogous to *Phillips*, in which the Fourteenth Court of Appeals held that, as to two counts of aggravated sexual assault alleged against the defendant, the trial court's failure to require an election by the State constituted harmful error. *See* 130 S.W.3d at 353–54. *Phillips* involved three counts of aggravated sexual assault alleged against the defendant—one count of oral penetration of the complainant's sexual organ, one count of digital penetration

of the complainant's sexual organ, and one count of penetrating the complainant's mouth with the defendant's sexual organ. *See id.* For the first two counts, the complainant presented detailed testimony concerning "more than a few offenses," including "clear testimony" of "two specific occurrences of both digital and oral penetration." *Id.* at 353. The Fourteenth Court noted that "both offenses were described in detail more than once" and yet "it was completely unclear to the jury which act the State would rely upon for conviction." *Id.* Thus, the court held that the failure to require the State to elect constituted harmful error. *Id.* at 354.

For the third count alleged against the defendant, in contrast, the complainant "testified in detail about only [one] occurrence, but also testified generally that the activity continued at least intermittently from the summer of 2000 until the spring of 2001." *Id.* The *Phillips* court held that, unlike the error in the other two counts, "error in failing to require the State to elect is harmless when there is detailed testimony as to one occurrence and general, very vague and unspecific testimony as to other occurrences," as there was in the third count in that case. *Id.* at 355. With respect to that count, the court reasoned, "Because the State focused its attention on one particular occurrence, it would have been clear to both appellant and the jury that the State was relying on that occurrence to convict." *Id.*

27

This is not a case comparable to the third count at issue in *Phillips*, in which there was detailed testimony as to one occurrence of the charged offense and "general, very vague and unspecific testimony" as to other occurrences. *See id.* at 355. Nor is it a case comparable to *Dixon*, in which the complainant testified to a general sequence of events that occurred on repeated occasions. *See* 201 S.W.3d at 735 (holding that there was "no risk that the present case led to a non-unanimous verdict" because "[t]he only distinguishing detail among the one hundred offenses [to which the child complainant testified was] that one occurred during the day, while all the others happened at night"); *see also Reza*, 339 S.W.3d at 716 (holding that trial court's error in failing to include instruction in jury charge as to State's election did not cause egregious harm in part because "[t]his is not a case in which the complainant described multiple specific incidents such that some jurors could have relied on one specific incident and other jurors could have relied on another specific incident"); *Duffey*, 326 S.W.3d at 633–34 (finding no harm in failing to instruct jury concerning State's election when complainant testified to one specific instance of vaginal penetration but testimony concerning other instances "was both brief and general in nature"); *Hulsey*, 211 S.W.3d at 856 (finding no harm in failing to require election by State "[f]or the same reasons articulated in *Dixon*").

Rather, in this case, K.M. provided detailed testimony concerning four specific, separate instances in which appellant's sexual organ contacted her sexual

28

organ. As with the first and second counts in *Phillips,* "clear testimony exist[ed]" for more than one specific occurrence of contact between appellant's sexual organ and K.M.'s sexual organ, "along with further testimony—often vague on the date, much less vague on describing the acts—that they often occurred." *See Phillips*, 130 S.W.3d at 353; *see also Farr*, 140 S.W.3d at 900 (finding failure to require State's election harmful when complainant presented "[s]pecific details of at least four instances of oral sex in the family's Houston apartment"). We conclude that, as with the first and second counts in *Phillips*, the sexual assault offense alleged in the indictment was "described in detail more than once; yet, it was completely unclear to the jury which act the State would rely upon for conviction." *See Phillips*, 130 S.W.3d at 353.

Furthermore, although the jury charge contained a general instruction that the jury had to unanimously find beyond a reasonable doubt that appellant committed the offense of aggravated sexual assault of a child, this is not sufficient to ensure, in a case in which the complainant testified to multiple detailed instances of conduct fitting the allegations in the indictment, that the jury unanimously agreed that appellant had committed the same particular offense. *See Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005) ("Unanimity in this context means that each and every juror agrees that the defendant committed the same, single, specific criminal act."); *see also Arrington v. State*, 451 S.W.3d 834, 841 (Tex.

29

Crim. App. 2015) ("[R]egardless of the number of times the generic [unanimity] requirement was mentioned, the entire instructions failed to apprise the jurors that they had to be unanimous on which incident of conduct they believed constituted each count in the indictment."). A general or "boilerplate" unanimity instruction can lead jurors to believe "that they [have] to be unanimous about the offense in general, not a particular incident comprising the offense." *See Cosio v. State*, 353 S.W.3d 766, 773 (Tex. Crim. App. 2011); *Demps v. State*, 278 S.W.3d 62, 68 (Tex. App.—Amarillo 2009, pet. ref'd) ("Although the jury charge did contain an instruction requiring a unanimous verdict, it did not contain any additional instructions requiring unanimity as to one distinct offense. Conceivably then, the jury could have believed that their verdict of guilty or not guilty need only be unanimous on the general offense of sexual assault.").

Here, the jury charge contained a general unanimity instruction, but it did not contain an instruction specifically informing the jury that it had to agree unanimously that appellant committed a particular act of sexual assault against K.M. The purpose of assuring a unanimous verdict was not satisfied.

The dissent argues that there is not a unanimity concern in this case because "the trial court clarified to [appellant's] counsel that the State pursued a conviction based on the single act as alleged in the indictment, and that the court planned to charge the jury as to that incident." Slip Op. at 4. The trial court charged the jury,

in accordance with the indictment, that if it unanimously found beyond a reasonable doubt that "on or about the 1st day of January, 2010" appellant sexually assaulted K.M., it was to find appellant guilty of aggravated sexual assault of a child. However, the charge also included an instruction informing the jury that "the State is not bound by the specific date which the offense, if any, is alleged in the indictment to have been committed, but that a conviction may be had upon proof beyond a reasonable doubt that the offense, if any, was committed at any time within the period of limitations."

Here, K.M. testified to four distinct instances of sexual assault, but she did not provide any dates for when these acts occurred, nor did she provide any indication of when in the year these acts occurred. Thus, there is no testimony that any of these four instances of sexual assault occurred on or around January 1, 2010, the date charged in the indictment and specified in the jury charge. Furthermore, the charge specifically informed the jury that the State was not bound by the particular date alleged in the indictment. Considering the evidence presented in this case, the instructions given to the jury in this charge did not ensure that the jury unanimously agreed beyond a reasonable doubt that appellant committed a particular act of sexual assault against K.M.

#### d. *Notice of the offense*

Finally, the fourth purpose of the election requirement is to give the defendant notice of the particular offense the State intends to rely upon to convict and to afford the defendant an opportunity to defend. Regarding this element, this case is also like the first and second counts in *Phillips*. In *Phillips*, it was "completely unclear" which of the two different specifically detailed occurrences of sexual assault the State intended to rely upon. *See* 130 S.W.3d at 353. By contrast, the Court of Criminal Appeals in *Dixon* "reject[ed] the notion that [the defendant] was deprived of adequate notice" focusing on the fact that "the only distinction made between the incidents is that one occurred during the day," and "[w]ithout more, a variance in the time of day is not a basis for claiming lack of notice." 201 S.W.3d at 736. The court then stated, "Further, there is no real doubt regarding which option the State would pick if forced to choose whether the offense relied upon was committed during the day or at night: it would pick the night, a characteristic shared by ninety-nine percent of the offenses about which the victim testified." *Id.*

This case—like *Phillips* but unlike *Dixon*—is not a case in which the child complainant testified to a course of events that occurred the same way each time with little variation. Instead, K.M. testified to four distinct incidents that occurred at different times, different locations, and involved different sexual acts. In

presenting its case, the State did not dwell on one instance significantly longer than the others. In the absence of an election, it was unclear from the testimony which incident the State would rely upon for a conviction. *See id.* Appellant, therefore, did not have adequate notice of the particular offense upon which the State intended to rely.

### e. Conclusion regarding harmful error

Because of the State's failure to elect which act it was relying upon for a conviction, the jury could have convicted appellant on any or all of the four instances of sexual assault as to which evidence was presented, with some of the jurors relying on one specific instance of sexual assault and other jurors relying on different instances of sexual assault, thus violating the jury unanimity requirement. *See Phillips*, 130 S.W.3d at 354. Moreover, by failing to require the State to make an election, appellant did not have adequate notice of which act the State would rely upon in time to present his defense. We therefore cannot say beyond a reasonable doubt that the trial court's error in failing to require the State to make its election did not contribute to appellant's conviction. *See id.*; TEX. R. APP. P. 44.2(a). We hold that the trial court committed harmful constitutional error in failing to require the State to make an election of the incident upon which it relied for conviction.

We sustain appellant's second issue.[5]

## Conclusion

We reverse the judgment and remand the case to the trial court for a new trial.

Evelyn V. Keyes
Justice

Panel consists of Justices Jennings, Keyes, and Bland.

Justice Bland, dissenting.

Publish. TEX. R. APP. P. 47.2(b).

---

[5] Because we sustain appellant's second issue and remand the case for a new trial, we do not address appellant's first issue concerning whether the trial court erred by allowing the State to question him about the underlying details of his prior conviction for aggravated robbery.

34